

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00029-CV

BRENDA LUND, IN HER
INDIVIDUAL CAPACITY, AND
KRISTIN ALRICK, IN HER
INDIVIDUAL CAPACITY

APPELLANTS

V.

ERIC AND RUTH GIAUQUE,
INDIVIDUALLY AND AS NEXT
FRIEND OF H.G., N.G., M.G., C.G.,
AND B.G., MINOR CHILDREN

APPELLEES

----------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Appellants Brenda Lund and Kristin Alrick appeal from the trial court's order denying their motion to dismiss, which raised the statutory right to dismissal conferred by civil practice and remedies code section 101.106(f). Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2011). We reverse the trial court's order

and render judgment dismissing Appellees' claims against Lund and Alrick. *See* Tex. R. App. P. 43.2(c).

## I. BACKGROUND

In 2006, the Texas Department of Family and Protective Services (DFPS) obtained a court order terminating parental rights as to four siblings (the children). After the termination, the children were placed with a relative in El Paso, Texas. It appears that the children were sexually and physically abused during that placement, which led DFPS to remove the children. This abuse caused the children to become "sexually reactive."

Meanwhile, appellees Eric and Ruth Giauque decided to adopt several children and signed a contract with Building Arizona Families (BAF), a non-profit adoption agency in Arizona, to accomplish that goal. In November 2008 and soon after the children were removed from their relative in El Paso, Alrick (a DFPS adoption caseworker) and Lund (a DFPS adoption supervisor) arranged with BAF to place the children with the Giauques for possible adoption. The children "perpetrated sexually reactive behaviors" on three of the Giauques' five biological children. In February 2009, the Giauques relinquished the children, who were returned to DFPS's custody.

The Giauques filed suit against Alrick and Lund, raising claims for negligence or gross negligence in the placement of the children with the

2

Giauques.[1]  The Giauques specified that their claims were not brought under the Texas Tort Claims Act (the Act) and that they were bringing their claims against Alrick and Lund in their individual capacities.[2]  Alrick and Lund answered and asserted the defense of immunity.  They also filed a motion to dismiss the Giauques' claims on the basis of section 101.106(f), which provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

In short, section 101.106(f) extends governmental immunity to acts of individual governmental employees acting within the scope of their employment.[3]

*LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 89–90 (Tex. 2011).

---

[1]The Giauques originally raised a claim for federal civil-rights violations but later amended their complaint to delete their federal claim.

[2]The Giauques' attempt to place their common-law tort claims outside the reach of the Act is of no moment.  It is clear that "any tort claim against the government is brought 'under' the Act for purposes of section 101.106, even if the Act does not waive immunity."  *Franka v. Valasquez*, 332 S.W.3d 367, 375 (Tex. 2011) (quoting section 101.106(f)).

[3]The Giauques did not plead in the trial court and do not assert on appeal that Alrick and Lund were not acting within the general scope of their employment when they placed the children for adoption through BAF.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5) (West Supp. 2013); *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004).

3

Alrick and Lund raised their right to dismissal under section 101.106(f) shortly after the supreme court held that section 101.106(f)'s phrase "could have been brought" applies to claims raised under the Act "regardless of whether the Act waives immunity from suit." *Franka*, 332 S.W.3d at 385. Therefore, *Franka* mandates dismissal of a governmental employee sued in her individual capacity under section 101.106(f) even if the governmental employer's immunity is not waived by the Act. *Id.* at 375–81.

Instead of dismissing Alrick and Lund and naming DFPS as the defendant as contemplated by section 101.106(f), the Giauques instead argued that section 101.106(f) violates the due-process guarantee provided by the open-courts provision of the Texas Constitution "as to [the Giauques] and as to the People of Texas as a whole." *See* Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983) (recognizing article 1, section 13 is due-process guarantee).

On March 11, 2011, the trial court held a hearing on Alrick and Lund's motion to dismiss. Although a record of the hearing is not a part of the appellate record, it appears the trial court requested supplemental briefing on the open-courts issue. The trial court later requested further briefing regarding whether Alrick and Lund were acting *in loco parentis* as to the children in facilitating their adoption, which the trial court believed would render the application of section 101.106(f) a violation of the open-courts provision because an *in-loco-parentis*

4

claim of negligence was well established at common law. After the briefing was completed, the trial court held a non-evidentiary hearing on September 30, 2011, to determine "whether or not the . . . Act effectively immunizes the defendants, and more specifically, whether or not the Open Court provision has been impacted by that immunization." Because the trial court determined more evidentiary discovery was needed to determine whether Alrick and Lund acted *in loco parentis*, it again delayed ruling on the motion to dismiss.

On October 26, 2012, the trial court held a third hearing on the motion to dismiss and stated the pertinent issue as "whether or not the Open Courts Provision is violated by . . . the manner in which the [Texas] Supreme Court['s] . . . interpretation of subsection (f) [in *Franka*] creates a violation of the Open Courts Doctrine." The trial court then denied Alrick and Lund's motion to dismiss based on the trial court's belief that application of section 101.106(f) would violate the open-courts provision. Alrick and Lund now appeal from the trial court's interlocutory order denying their motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) (West Supp. 2013); *City of Arlington v. Randall*, 301 S.W.3d 896, 902 n.2 (Tex. App.—Fort Worth 2009, pet. denied). In a sole issue, they argue that the trial court erred by denying their motion to dismiss based on section 101.106(f).

## II. DISCUSSION

On appeal, the Giauques do not assert that section 101.106(f) is inapplicable to their suit.[4]  Thus, the propriety of *Franka* is not at issue.  *See Franka*, 332 S.W.3d at 367 (noting constitutional challenge to section 101.106(f) not raised).  Instead, the Giauques argue that section 101.106(f)'s mandatory dismissal of a governmental employee sued in her individual capacity, even in the absence of a waiver of sovereign immunity, violates the open-courts provision.  In other words, they argue that section 101.106(f)'s statutory extension of governmental immunity to acts of individual government employees acting within the scope of their employment unconstitutionally violates their due-process rights under the open-courts provision of the Texas Constitution.

### A.  STANDARDS OF REVIEW

### 1.  Constitutional Review

The open-courts provision prohibits arbitrary or unreasonable legislative action that abrogates well-established, common-law remedies.  *Lebohm v. City of Galveston*, 275 S.W.2d 951, 955 (Tex. 1955) (op. on reh'g).  This provision ensures that Texas citizens bringing common-law causes of action will not unreasonably be denied the right to redress in the courts.  *Hanks v. City of Port Arthur*, 48 S.W.2d 944, 945 (Tex. 1932). "[A] mere difference of opinion, where

---

[4]The Giauques raised this argument in the trial court but abandoned it after the supreme court denied rehearing in *Franka*.

reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968).

Because we are asked to review a trial court's legal determination—that section 101.106(f) violates the Texas Constitution—we must look at the issue de novo. *See Stockton v. Offenbach*, 336 S.W.3d 610, 614–15 (Tex. 2011); *accord Nat'l Rifle Ass'n of Am. v. McCraw*, 719 F.3d 338, 343 (5th Cir. 2013) (applying de-novo standard of review to issue of constitutionality of Texas state statute). In such a review, we begin with the presumption that the statute is constitutional. Tex. Gov't Code Ann. § 311.021(1) (West 2013); *Sax*, 648 S.W.2d at 664; *see also Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 285 (Tex. 2010); *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex. 1994). As such, we must attempt to "interpret legislative enactments in a manner to avoid constitutional infirmities." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996).

The Giauques bore the burden at trial (and now on appeal) to show that the statute unconstitutionally violates the open-courts provision. *See Rankin*, 307 S.W.3d at 285. The Giauques assert that Alrick and Lund bear the burden to establish the constitutionality of section 101.106(f). However, case law is clear that the party challenging a statute's constitutionality has the burden of proving that the statute fails to meet constitutional requirements. *See Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003); *Zaborac v. Tex. Dep't of Pub. Safety*, 168 S.W.3d 222, 225 (Tex. App.—Fort Worth 2005, no pet.). However, and as

7

stated above, we review the trial court's constitutional conclusion, and all legal determinations leading to that conclusion, de novo, which allows us to "take a completely fresh look at the trial court's rulings." W. Wendell Hall et al., *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 14 (2010).

## 2. Type of Constitutional Challenge

To establish an open-courts violation, the Giauques must show that (1) the statute restricts a well-recognized, common-law cause of action (the well-recognized prong) and (2) the restriction is unreasonable or arbitrary when balanced against the Act's purpose (the balance prong).[5] *Thomas v. Oldham*, 895 S.W.3d 352, 357 (Tex. 1995); *Sax*, 648 S.W.2d at 664; *Flores v. Law*, 8 S.W.3d 785, 787 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

This two-pronged inquiry applies to open-courts issues whether the underlying challenge is an as-applied or a facial attack. *Boyd v. Kallam*, 152 S.W.3d 670, 680 (Tex. App.—Fort Worth 2004), *pets. denied*, 232 S.W.3d 774 (Tex. 2007). Even so, the well-recognized prong is affected by the type of challenge raised. With a facial challenge, the party charging that a statute is unconstitutional must show that "the statute, by its terms, always operates

---

[5]We agree with Alrick and Lund that we must look to the purposes served by the Act as a whole and not just to the purposes served by section 101.106(f). *Cf. Franka*, 332 S.W.3d at 380 (noting error to not consider "the Act as a whole" in interpreting section 101.106). The Giauques concede that our determination regarding the legislature's purpose "is the same regardless of whether the Court examines the issue in terms of section 101.106(f) specifically . . . or the Tort Claims Act as a whole."

8

unconstitutionally." *Barshop*, 925 S.W.2d at 627. Under an as-applied challenge, on the other hand, "a party concedes that a statute is generally constitutional but contends that the statute is unconstitutional when applied to a particular person or set of facts." *City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 240 (Tex. 2001). Thus, an as-applied challenge looks to the particular set of facts before the court in determining whether the cause of action was well recognized at common law, while a facial challenge does not look to the specific facts of the case at hand.

The Giauques assert that their challenge raises the unconstitutionality of section 101.106(f) on its face or "as applied to a broad class of people," i.e., persons whose claims are not included within the Act's waiver of immunity. We question whether, indeed, there is a separate and distinct challenge that a statute is unconstitutional as applied to a broad class of people. In fact, case law recognizes only two constitutional challenges to a statute: as-applied and facial. *See, e.g.*, *HCA Healthcare Corp. v. Tex. Dep't of Ins.*, 303 S.W.3d 345, 349 (Tex. App.—Austin 2009, no pet.). We do not need to wade into this argument, however, because even if there were such a constitutional challenge, it would be subject to the same two-pronged analysis applicable to as-applied and facial challenges and, thus, the dictates of the balance prong, which is not affected by the type of constitutional challenge raised. *See generally Boyd*, 152 S.W.3d 680 (recognizing uniform application of two-pronged, open-courts inquiry to as-applied and facial challenges to statute). Further, the tenor of the Giauques' trial

9

and appellate arguments and the fact that the trial court ruled the statute unconstitutional on an as-applied basis rebuff their attempt to avoid an as-applied analysis. *Cf. A.H.D. Houston, Inc. v. City of Houston*, 316 S.W.3d 212, 222 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (looking behind label placed on constitutional challenge and determining appellants' attempts to avoid facial-challenge test unavailing).

## B. APPLICATION

### 1. *Franka* and Its Precedential Import

As recognized above, the supreme court in *Franka* was not presented with a constitutional challenge to section 101.106(f). However, it opined that an open-courts challenge to the statute would not be tenable:

> We recognize that the Open Courts provision of the Texas Constitution "prohibits the Legislature from unreasonably abrogating well-established common-law claims," but restrictions on government employee liability have always been part of the tradeoff for the Act's waiver of immunity, expanding the government's own liability for its employees' conduct, and thus "a reasonable exercise of the police power in the interest of the general welfare."

*Franka*, 332 S.W.3d at 385 (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 202 (Tex. 2002) and *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995)). Relying on this language in *Franka*, one of our sister courts and two federal trial courts have concluded that section 101.106(f) does not violate the open-courts provision because its restriction is reasonable when balanced against its purpose and is, thus, not arbitrary or unreasonable. *Zepeda v. Sizemore*, No. SA:11-CV-901-DAE, 2013 WL 4677964, at *7–9 (W.D. Tex.

10

Aug. 30, 2013); *Kelley v. Chambers Cnty.*, No. 3:12-CV-00194, 2013 WL 1003455, at *4 (S.D. Tex. Mar. 13, 2013); *Harold v. Carrick*, No. 01-12-00175-CV, 2013 WL 4828744, at *3 (Tex. App.—Houston [1st Dist.] Sept. 10, 2013, no pet. h.) (mem. op.); *Williams v. Nealon*, 394 S.W.3d 9, 13–14 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *cf. Hintz v. Lally*, 305 S.W.3d 761, 773 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding, before *Franka* was decided, section 101.106(f) did not violate open-courts provision because statute was "reasonable when balanced against the statute's purpose").

While recognizing the above-quoted language from *Franka* and its potential import to the survival of their claims against Alrick and Lund, the Giauques assert that because the *Franka* language was dictum, we instead are bound by several cases decided by the supreme court before *Franka*: *Sax*, 648 S.W.2d at 667, *Lucas v. United States*, 757 S.W.2d 687, 692 (Tex. 1988) (certified questions), and *Weiner v. Wasson*, 900 S.W.2d 316, 319–20 (Tex. 1995). The Giauques argue that these cases demonstrate that section 101.106(f) violates the open-courts doctrine under the balance prong because no substitute remedy was provided. Indeed, the trial court seemed to agree with this argument.

### a. Dictum

First, the language in *Franka*, while dictum, was not a brusque statement unworthy of deference; rather, the supreme court's statement that section 101.106(f) would survive the balance prong of an open-courts challenge was tied

11

to its extensive discussion of the legislative purposes of and the legislature's legitimate use of police powers in section 101.106. *Franka*, 332 S.W.3d at 382– 85. The precedential value of dictum is based on its classification: obiter dictum or judicial dictum. *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Obiter dictum is a statement not necessary to the determination of the case and that is neither binding nor precedential. *Id.* Conversely, judicial dictum is a statement made deliberately after careful consideration and for future guidance in the conduct of litigation. *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex. 1964). Such a statement is "at least persuasive and should be followed unless found to be erroneous." *Id.* Because the supreme court's conclusion regarding section 101.106(f) and the open-courts provision was the natural consequence of its reasoned and careful analysis of the legislature's use of its police power in the interest of the general welfare, its open-courts conclusion was judicial dictum and should be viewed at least as persuasive. *Cf. Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (rejecting court of appeals's determination that supreme court's prior statement was obiter dictum because although prior statement not "essential to the outcome," it "should have been followed"); *Reardon v. Reardon*, 359 S.W.2d 329, 330 (Tex. 1962) (recognizing dicta in previous case "deliberately made by this Court after a careful consideration" and suggesting it was due some degree of deference).

12

### b. Cases decided before *Franka*

Second, the cases primarily relied on by the Giauques to overcome the balance prong do not support their argument that a substitute remedy is *required* to address the balance prong of an open-courts analysis. Almost sixty years ago, the supreme court explicitly held that while a reasonable substitute remedy alone might be sufficient to defeat an open-courts challenge, such a remedy is not required to survive an open-courts attack under the balance prong:

> [L]egislative action withdrawing common-law remedies for well established common-law causes of action for injuries to one's "lands, goods, person or reputation" is sustained only when it is reasonable in substituting other remedies, *or* when it is a reasonable exercise of the police power in the interest of the general welfare.

*Lebohm*, 275 S.W.2d at 955 (quoting the open-courts provision) (emphasis added).[6] This has been described as a recognition "that an individual quid pro quo is unnecessary if a *societal* quid pro quo exists." *Lucas*, 757 S.W.2d at 697 (Gonzalez, J., dissenting). The Giauques argue that the supreme court "refined"

---

[6]It has been suggested that the balance prong as set forth in *Lebohm* is a two-part inquiry:

> If the Legislature has provided or left in place a reasonable alternative remedy, judicial scrutiny is at an end, and properly so. . . . If the Legislature has not provided or left in place a reasonable alternative remedy, however, the Constitution requires a second, separate inquiry. The courts must independently determine if the legislative action constitutes a reasonable exercise of the police power.

*Lucas*, 757 S.W.2d at 718 (Phillips, C.J., dissenting). This is a clear and helpful statement of the *Lebohm* holding and the balance prong.

the *Lebohm* test in *Sax*, *Weiner*, and *Lucas*. They contend that these cases mandate that the legislature's means to achieve a valid purpose may never be held reasonable in the absence of a substitute remedy.

In *Sax*, the supreme court concluded that a statute of limitations, which limited a minor's opportunity to file a healthcare-liability claim, violated the open-courts provision because the means (i.e., the limitation statute as it applied to minors) used by the legislature to achieve its purpose (i.e., controlling the rates insurers charged by reducing the length of time insureds are exposed to potential liability) were not "reasonable when . . . weighed against the effective abrogation of a child's right to redress." 648 S.W.2d at 667. The supreme court then held that both prongs of the open-courts test were met to establish an open-courts violation because the "statute effectively abolishes a minor's right to bring a well-established common law cause of action without providing a reasonable alternative." *Id.* However, this holding does not mandate that a substitute remedy *must* be provided to satisfy the balance prong. It was merely a conclusion, expressly limited to the facts of that case, that the lack of a substitute remedy combined with the means used by the legislature and the abrogation of a right of redress equated to an open-courts violation. *Id.* at 665–67. Nothing in *Sax* vitiated the *Lebohm* mandate that, alternatively, a reasonable exercise of the police power in the interest of the general welfare could render the legislature's means to achieve a legitimate purpose reasonable and not arbitrary. Indeed, the *Sax* court quoted the *Lebohm* language with approval. *Id.* at 665.

14

Likewise, *Lucas* gives the Giauques no succor.  In that case, the supreme court was asked on certified questions to decide whether the damages cap for healthcare-liability claims violated the open-courts provision of the Texas Constitution.  757 S.W.2d at 687.  In concluding that the cap violated the open-courts provision, the court stated:  "[W]e hold it is unreasonable and arbitrary for the legislature to conclude that arbitrary damages caps, applicable to all claimants no matter how seriously injured, will help assure a rational relationship between actual damages and amounts awarded."  *Id.* at 691.  Although its holding was based, in part, on the fact that the legislature failed to provide a substitute remedy (specifically, a patient-compensation fund), the supreme court did not explicitly hold that the lack of a substitute remedy in all instances would, ipso facto, compel a conclusion that the legislature's action was arbitrary or unreasonable.  *See id.* at 697 (Gonzalez, J., dissenting) (recognizing that lack of substitute remedy invalidating legislature's means to achieve purpose was only majority's implicit holding); *see also id.* at 716 (Phillips, C.J., dissenting) (acknowledging that "Texas restricts arbitrary legislative abolition of well-recognized common law causes of action under the open courts provision, while declining to require a quid pro quo whenever common law remedies are changed").

Finally, we address the impact of *Weiner*.  In *Weiner*, the supreme court looked at the successor statute to the statute considered in *Sax*.  900 S.W.2d at 318.  Because the successor statute was substantially the same as its

15

predecessor, which was found unconstitutional in *Sax*, the supreme court similarly concluded that the means used to achieve the legislature's purpose were unreasonable when weighed against the abrogation of the minor litigant's right of redress. *Id.* at 318. As with *Sax*, the *Weiner* court did not explicitly nullify the possibility that the abolition of a common-law cause of action could be justified as a reasonable exercise of police power. *Id.* at 325 (Owen, J., dissenting) (recognizing *Sax* did not compel an analysis devoid of police-power exception).

Contrary to the Giauques' argument that a reasonable substitute remedy is required to justify the abrogation of a litigant's right of redress, it is clear that the *Lebohm* test to determine whether legislative action is arbitrary or unreasonable—availability of a substitute remedy or a reasonable exercise of the legislature's police power—is alive and well. Recently, the supreme court, in reviewing a statute of repose for compliance with the open-courts provision, reaffirmed the relevance of the legislature's valid exercise of its police power:

> But [an] Open Courts analysis is not . . . myopic; focusing solely on [the litigant's] lost right to sue ignores the broader societal concerns that spurred the Legislature to act. . . .
>
> . . . .
>
> In enacting the repose [statute], lawmakers made a fundamental policy choice: the collective benefits of a definitive cut-off are more important than a particular plaintiff's right to sue more than a decade after the alleged malpractice. . . . The constitutional inquiry is whether the Legislature acted unreasonably or arbitrarily.
>
> . . . .

16

> [The statute of repose] is a reasonable exercise of the Legislature's police power . . . .
>
> . . . .
>
> . . . Our constitutional review asks only if the statute represents "a reasonable exercise of the police power in the interest of the general welfare," a review that focuses on whether the legislation is "arbitrary or unreasonable."

*Rankin*, 307 S.W.3d at 287–88, 290, 292 (quoting *Lebohm*); *see also Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 889 S.W.2d 259, 261–62 (Tex. 1994) (citing and applying *Lebohm* to unsuccessful open-courts challenge to statute of repose). Likewise, this court and other intermediate courts of appeals explicitly have recognized, even after *Sax*, *Lucas*, and *Weiner*, that the legislature's reasonable exercise of its police power can justify its action in abrogating a litigant's well-established, common-law claims, thereby saving the abrogation from being held as violative of the open-courts provision as an arbitrary or unreasonable legislative act. *See, e.g.*, *Williams*, 394 S.W.3d at 12; *Rivera v. Compton*, 392 S.W.3d 326, 332–33 (Tex. App.—El Paso 2012, pet. filed); *Garza v. Zachry Constr. Corp.*, 373 S.W.3d 715, 723–24 (Tex. App.—San Antonio 2012, pet. denied); *In re Hinterlong*, 109 S.W.3d 611, 631 (Tex. App.—Fort Worth 2003, orig. proceeding) (op. on reh'g).

Further, we find it instructive that in *Lucas* and *Weiner*, the dissenting justices specifically took issue with the majority opinions because they seemed to gloss over the fact that legislative action could be justified as a valid exercise of

17

its police power and to rely exclusively on the lack of a substitute remedy in striking down the statutes at issue under the open-courts provision. *Weiner*, 900 S.W.2d at 324–26 (Owen, J., dissenting); *Lucas*, 757 S.W.2d at 696–98 (Gonzalez, J., dissenting) & 716–19 (Phillips, C.J., dissenting). In deciding *Franka*, the supreme court certainly was aware of the implicit dilution or obscuring of the balance prong as set out in *Lebohm* and pointed out by the dissenting justices in *Weiner* and *Lucas*, and it firmly restated the *Lebohm* balance prong. 332 S.W.3d at 385; *see Lucas*, 757 S.W.2d at 716 (Phillips, C.J., dissenting) (noting majority "obscures" the correct balance prong). Indeed, the dissenting justices in *Franka* did not take issue with the majority opinion's statement of the appropriate test for an open-courts challenge, which included both the substitute-remedy language and the police-power language under the balance prong. 332 S.W.3d at 394 (Medina, J., dissenting). Thus, we follow *Lebohm* and *Franka* and conclude that the balance prong considers whether the legislature's action was arbitrary or unreasonable by deciding (1) whether a substitute remedy was provided or (2) whether the legislative action was a reasonable exercise of the legislature's police power in the interest of the general welfare.

## 2. The Balance Prong

We start with an analysis of the balance prong. *See Zepeda*, 2013 WL 4677964, at *9 (not discussing well-recognized prong and deciding open-courts challenge solely on basis of balance prong); *Harold*, 2013 WL 4828744, at *3

18

(same); *Williams*, 394 S.W.3d at 14 (same). No party suggests that the Giauques have been provided with a reasonable, substitute remedy to counteract the effect of section 101.106(f) on their claims. Thus, we must now independently determine whether the legislature reasonably exercised its police power in the interest of the general welfare in enacting section 101.106(f). *See Lucas*, 757 S.W.2d at 718 (Phillips, C.J., dissenting).

Before the Act was passed, if suit against a governmental entity was barred by immunity, a plaintiff could sue and recover against a government employee in her individual capacity even though she could be shielded by official immunity if she were sued in her official capacity. *Franka*, 332 S.W.3d at 383. Further, the State could waive the government's immunity. *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012); *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). Indeed, in 1969, the legislature passed the Act, which included limited waivers with respect to specific types of claims against governmental entities. Act of May 14, 1969, 61st Leg., R.S., ch. 292, 1969 Tex. Gen. Laws 874, 874–79 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109 (West 2011 & Supp. 2013)). Admittedly, this avenue, which provides for common-law recovery against the governmental entity, is narrow. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). But its purpose was to mandate that plaintiffs pursue lawsuits against governmental entities rather than the entities' employees when the claims are based on the employee's conduct within the scope of employment. *Tex. Adjutant*

19

*Gen.'s Office v. Ngakoue*, 56 Tex. Sup. Ct. J. 1131, 2013 WL 4608867, at *1 (Aug. 30, 2013). In short, the legislature "sought to discourage or prevent recovery against an employee." *Franka*, 332 S.W.3d at 384.

To avoid the Act's restrictions on cognizable claims against the governmental entity, claimants began to sue the individual employees of governmental entities and not the entities. *Ngakoue*, 2013 WL 4608867, at *7 (citing *Garcia*, 253 S.W.3d at 656). As a result, the 1985 legislature added a provision to the Act that barred any action against governmental employees after claims against the governmental entity were reduced to a judgment or settled. Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 101.106).

Claimants, however, continued to sue both the governmental entity and its employee. *Garcia*, 253 S.W.3d at 656. The result was an increase in litigation costs for the government. *Id.* The legislature responded by amending section 101.106 in 2003 to force claimants

> to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery. By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the . . . Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs.

*Id.* at 657. In other words, the legislature sought to limit a common-law claimant's tort remedy against a governmental employee to those remedies provided under the Act against the governmental entity. *Franka*, 332 S.W.3d at 385; Michael S. Hull et al., *House Bill 4 & Proposition 12: An Analysis with Legislative History, Part Three*, 36 Tex. Tech L. Rev. 169, 292 (2005). The amendment was an attempt to "address the open courts objections in *Sax*." Hull, *House Bill 4*, *supra*, at 190. "As a result, the need for determining if official immunity applies is eliminated." *Id.* at 293.

We conclude that the legislature's action in enacting section 101.106(f) was a reasonable exercise of its police power to achieve the societal goal of limiting claims against individual governmental employees. *See id.* at 292 ("Official immunity benefits the public by removing the threat of personal liability for officials who should be vigorously administering the policies of government.") Indeed, "restrictions on government employee liability have always been part of the tradeoff for the Act's waiver of immunity, expanding the government's own liability for its employees' conduct." *Franka*, 332 S.W.3d at 385. The fact that the governmental entity's liability in this case was not expanded under the Act does not affect the underlying reasonableness of the purpose the legislature sought to codify through section 101.106(f). *See Ngakoue*, 2013 WL 4608867, at *7 n.12 (noting language of subsection (f) chosen "in furtherance of the purposes of the statute"). Therefore, the legislature did not act arbitrarily or unreasonably, which is fatal to the Giauques' open-courts claim. *See Barshop*, 925 S.W.2d at

21

629 (cautioning statutes should be interpreted "in a manner to avoid constitutional infirmities"); *Lucas*, 757 S.W.2d at 721 (Phillips, C.J., dissenting) (cautioning that a "carefully crafted legislative response to a major social problem" cannot be found unconstitutional merely because the solution is "distasteful"). Because we conclude that the Giauques have failed to show that section 101.106(f) violates the open-courts provision under the balance prong, we need not address whether the Giauques' claims were well recognized at common law. *Cf. Young v. Jones Lumber Co.*, 784 S.W.2d 949, 950 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (declining to address balance prong of open-courts analysis after concluding well-recognized prong not satisfied).

## III. CONCLUSION

We sustain Alrick and Lund's issue, reverse the trial court's order, and render judgment dismissing the Giauques' claims against Alrick and Lund under section 101.106(f).

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, MCCOY, and GABRIEL, JJ.

DELIVERED: October 31, 2013

22