

# NUMBER 13-21-00279-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF L.M.R., A CHILD

**On appeal from the 332nd District Court
of Hidalgo County, Texas.**

# OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Opinion by Chief Justice Contreras**

Appellant J.R.R. (Jordan)[1] appeals the trial court's order granting appellee J.C.F. (Frank)'s petition to adjudicate parentage, which Frank brought to establish a father-child relationship with L.M.R. (Lucy). Jordan was Lucy's presumed father, and Frank filed this suit over one year after Lucy's fourth birthday. When a child has a presumed father and

---

[1] To preserve the privacy of the child, we identify the parties by pseudonyms. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

is over the age of four, § 160.607 of the Texas Family Code bars suits adjudicating parentage, with only two exceptions. *See* TEX. FAM. CODE ANN. § 160.607(b). By a single issue, which we address as two issues, Jordan argues that the trial court erred in concluding (1) that one or both of the statutory exceptions apply or (2) that applying § 160.607 in this case violated Frank's Fourteenth Amendment rights under the United States Constitution. We reverse and render judgment.

## I. BACKGROUND[2]

Jordan and L.G. (Dina), Lucy's mother, were married when Lucy was born in May 2014. In late October 2014, Dina and Jordan separated. In August 2015, Dina and Frank began cohabiting. In October 2015, Dina and Jordan filed for divorce, and the divorce was granted in August 2016. Four children were born during Jordan and Dina's marriage, and the divorce order provided for visitation between Jordan and each of the children. Dina was granted the exclusive right to designate the children's residence, and they now reside with Dina and Frank—who, at some point before suit was filed, married.

In September 2019, Frank filed his petition to adjudicate parentage after he took a DNA test indicating a 99.96% probability that he was Lucy's biological father. Jordan filed his answer conceding that, based on the DNA test results, Frank was likely Lucy's biological father, but arguing among other things that "[Frank] is precluded from seeking an adjudication of parentage because [Frank]'s claim is untimely and barred by Texas Family Code § 160.607(a)." Frank responded with a brief in support of his petition, arguing that his federal constitutional rights as a parent are infringed upon by the statutory

---

[2] No testimony was taken in this case. The parties stipulated to certain relevant facts by agreement, which the trial court approved. The background is adapted from the stipulated facts.

requirement that his suit be brought before Lucy's fourth birthday. The trial court set a final hearing on the petition for May 17, 2021. No testimony was taken at the hearing beyond arguments by counsel, and the trial court requested further briefing on the exceptions to the four-year limitations period, which counsel for both parties subsequently filed.

In its August 30, 2021 "Order Adjudicating Parentage," the trial court ruled, among other things, that Frank "is declared the father of [Lucy]" and that "the father-child relationship is established between [Lucy] and [Frank] for all purposes." Jordan then timely filed his notice of appeal.

## II.    UNIFORM PARENTAGE ACT

Jordan argues that the trial court erred by granting Frank's petition because the statute of limitations had passed, no statutory exception applied, and Texas Family Code § 160.607 is constitutional. Frank argues that a statutory exception applied, or alternatively, that the statute violates his Fourteenth Amendment rights under the United States Constitution.

### A.    Standard of Review

We review a trial court's order in a proceeding to adjudicate parentage for abuse of discretion. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). A trial court abuses its discretion when it acts "without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford*, 801 S.W.2d at 109. To determine whether the trial court abused its discretion, we review the "evidence in a light most favorable to the court's decision and indulge every legal

3

presumption in favor of its judgment." *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi–Edinburg 2005, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *In re R.T.K.*, 324 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.).

Where, as here, no findings of fact and conclusions of law are filed, "all facts necessary to support the judgment and supported by the evidence are implied." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). We must uphold the trial court's judgment "on any legal theory before it, even if the court gives an incorrect reason for its judgment." *Guar. Cnty. Mut. Ins. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986); *Miramar Petroleum, Inc. v. Cimarron Eng'g, LLC*, 484 S.W.3d 214, 217 n.2 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied).

## B.    Applicable Law

The Fort Worth Court of Appeals recently addressed the subject at issue in this case and cogently explained the relevant law as follows:

> A "parent-child relationship" in Texas means the legal relationship between a child and the child's parent as provided under chapter 160 of the family code. *See* TEX. FAM. CODE ANN. § 101.025. Once established, this legal relationship confers numerous rights and duties upon a child's parents. *See id.* § 151.001. For example, a child's parent has the right to have physical possession of the child, to direct the child's moral and religious training, to make decisions concerning the child's education, and to designate the residence of the child. *Id.* § 151.001(a)(1), (10). A parent also has the right to represent the child in a legal action and to make other decisions of substantial significance concerning the child. *Id.* § 151.001(a)(7). A child's parent has the right to inherit from and through the child and generally has the right to the services and earnings of the child. *Id.* § 151.001(a)(5), (9). The list goes on. *See id.* § 151.001.
>
> The duties of a parent are similarly vast. A child's parent has the duty of

4

care, control, protection, and reasonable discipline of the child. *Id.* § 151.001(a)(2). A parent has the duty to support the child, a duty that includes providing the child with clothing, food, shelter, medical and dental care, and an education. *Id.* § 151.001(a)(3). A parent also generally has the duty to manage the estate of the child. *Id.* § 151.001(a)(4). And there are more. *See id.* § 151.001.

The parent-child relationship includes the mother-child relationship and the father-child relationship. *See id.* §§ 101.024(a), .025, 160.102(11), .201. [Frank] desire[d] to establish the latter between himself and [Lucy], thereby placing in [Frank] all the rights and duties of a parent as described above. A father-child relationship can be established between a man and a child in the following ways:

> (1) an unrebutted presumption of the man's paternity of the child under Section 160.204;
>
> (2) an effective acknowledgment of paternity by the man under Subchapter D, unless the acknowledgment has been rescinded or successfully challenged;
>
> (3) an adjudication of the man's paternity;
>
> (4) the adoption of the child by the man; or
>
> (5) the man's consenting to assisted reproduction by his wife under Subchapter H, which resulted in the birth of the child.

*Id.* § 160.201(b). The first and third means are in play here. Under the first means, a father-child relationship between a man and a child can be established by presumption under several circumstances, including if the man was married to the child's mother when the child was born. *Id.* § 160.204(a)(1). That is what happened here: [Jordan] was married to [Dina] when she gave birth to [Lucy]. Thus, the law presumes that [Jordan] is [Lucy]'s father. *See id.*

But [Frank] alleges that he, not [Jordan], is [Lucy]'s biological father. Nevertheless, [§] 160.204—the statute prescribing the circumstances under which a man is presumed to be a child's father—does not presume a man to be a child's father merely because the man is the child's biological father. *See id.* § 160.204. And if a presumption arises that a man is a child's father under [§] 160.204, that presumption is a particularly strong one, even if it so happens that the man is not the child's biological father. The presumption can be rebutted in only two circumstances: (1) when there is a formal

adjudication of parentage in a proceeding brought for that purpose or (2) when the presumed father files a valid denial of paternity in conjunction with another person's filing of a valid acknowledgement of paternity. *Id.* § 160.204(b); *In re S.C.L.,* 175 S.W.3d 555, 559 (Tex. App.—Dallas 2005, no pet.). So long as the presumption stays unrebutted, the law deems the presumed father to be the child's father. TEX. FAM. CODE ANN. §§ 160.102(13), .201(b)(1); *S.C.L.,* 175 S.W.3d at 557.

With [Jordan] as [Lucy]'s presumed father, then, [Frank did] not have an existing father-child relationship with [Lucy] under Texas law. *See* TEX. FAM. CODE ANN. § 160.201. Instead, based on [Frank]'s allegation that he is [Lucy]'s biological father, [Frank was] an alleged father. *See id.* § 101.0015 (defining "alleged father" to mean "a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined"). So [Frank] filed this suit to adjudicate parentage in order to rebut [Jordan]'s presumed-father status and to establish a father-child relationship with [Lucy]. *See id.* § 160.602(a)(3).

If a child does not have a presumed, acknowledged, or adjudicated father, a person with standing to bring a suit to adjudicate the parentage of the child may file that suit at any time. *See id.* §§ 160.602, .606. But that is not so if the child has a presumed father, as [Lucy] does here. Section 160.607 applies to that situation, and it provides as follows:

(a) Except as otherwise provided by Subsection (b), a proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father shall be commenced not later than the fourth anniversary of the date of the birth of the child.

(b) A proceeding seeking to adjudicate the parentage of a child having a presumed father may be maintained at any time if the court determines that:

(1) the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; or

(2) the presumed father was precluded from commencing a proceeding to adjudicate the parentage of the child before the expiration of the time prescribed by Subsection (a) because of the

6

> mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion.

*Id.* § 160.607; *see S.C.L.*, 175 S.W.3d at 557.

*In re J.C.*, 594 S.W.3d 466, 469–70 (Tex. App.—Fort Worth 2019, no pet.).

The party seeking to avoid the four-year limitations period under § 160.607(b) bears the burden to prove that the period was tolled. *See In re Rodriguez*, 248 S.W.3d 444, 451 (Tex. App.—Dallas 2008, orig. proceeding); *see also In re Office of the Atty. Gen.*, No. 13-11-00006-CV, 2011 WL 578733, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2011, orig. proceeding) (mem. op.). The common law discovery rule does not toll the limitations period in § 160.607. *In re S.T.*, 467 S.W.3d 720, 726 (Tex. App.—Fort Worth 2015, no pet.).

## III.    DISCUSSION

Because the trial court did not file findings of fact or conclusions of law indicating the basis for its judgment, we analyze the two legal theories presented to it: (1) that one or both § 160.607(b) exceptions apply; or (2) that application of § 160.607 to Frank violates his Fourteenth Amendment rights under the United States Constitution. *See* TEX. FAM. CODE ANN. § 160.607; *Reyna*, 709 S.W.2d at 658; U.S. CONST. amend. XIV, § 1.

### A.    Statutory Exceptions

We first address the argument that a § 160.607(b) exception applied in this case allowing Frank to file his petition after Lucy's fourth birthday. *See* TEX. FAM. CODE ANN. § 160.607(b). As applied to this case, those exceptions are either (1) that Jordan and Dina did not live together or engage in sexual intercourse with each other during the probable time of Lucy's conception, or (2) that Jordan was precluded from bringing suit

before Lucy's fourth birthday because of the mistaken belief that he was Lucy's biological father based on misrepresentations that led him to that conclusion. *See id.*

### 1.    § 160.607(b)(1) Exception

As to the first exception, Dina and Jordan stipulated to the fact that they were living together at the time of Lucy's birth. Moreover, there is no evidence in the record as to whether Dina and Jordan were engaging in sexual relations during the probable time of Lucy's conception. Accordingly, the trial court lacked any evidence upon which to base its decision to grant Frank's petition under § 160.607(b)(1), and it would have erred by doing so. *See In re R.T.K.*, 324 S.W.3d at 899–900; TEX. FAM. CODE ANN. § 160.607(b)(1).

### 2.    § 160.607(b)(2) Exception

Next, Frank contends that the trial court could have correctly applied § 160.607(b)(2). *See* TEX. FAM. CODE ANN. § 160.607(b)(2). That is, Frank argues that Jordan was precluded from filing a paternity suit due to Dina's misrepresentations that Jordan was Lucy's biological father, and therefore, Frank should be able to bring a suit under § 160.607(b)(2). *See id.* Frank claims that the trial court could have found that Dina's misrepresentation of Jordan's status as Lucy's biological father constituted common law fraud and fraud by non-dislocusure.

We note initially that to decide this issue in Frank's favor, we would have to hold that a party other than a presumed father may raise the § 160.607(b)(2) exception. *See id.* But we need not decide the issue here because, even if an individual in Frank's position could raise the exception, the record is devoid of evidence necessary for him to successfully do so.

In his brief on appeal, Frank states that Dina

8

> misrepresented to [Jordan] that he was the father of [Lucy] since her birth. [Lucy] was listed as a child of the marriage when [Dina] and [Jordan]'s divorce was final. . . . [Jordan] did not suspect [Frank] was [Lucy]'s biological father at the time of the divorce. [Dina] did nothing at the time to disabuse [Jordan] of the notion that he was [Lucy]'s father. In fact, [Jordan] was granted visitation with [Lucy] when the divorce was final, and since the divorce, [Jordan] has had extended visitation with [Lucy].

On this account, Frank asserts, "The foregoing facts support [a finding that Jordan], the presumed father, mistakenly believed he was [Lucy]'s father due to [Dina]'s misrepresentations . . . ." We disagree.

The record lacks any evidence supporting any claim of misrepresentation. There is no evidence in the record that Jordan was misled by Dina that he was Lucy's biological father, or that Dina knew or assumed that Jordan was not Lucy's biological father. In fact, the record reflects that only Frank questioned who Lucy's biological father was, that only he suspected that he was Lucy's biological father, and that the parties only discovered Jordan was not Lucy's biological father when Frank ultimately took and received the results of his DNA test in June 2019. It is Frank's burden to provide evidence raising an exception to § 160.607's four-year statute of limitations. *In re Rodriguez*, 248 S.W.3d at 451; *see* TEX. FAM. CODE ANN. § 160.607; *see also In re Office of the Atty. Gen.*, 2011 WL 578733, at *3. He failed to meet that burden.

Because the trial court lacked any evidence upon which to base its decision to grant Frank's petition under either of the two § 160.607(b) exceptions, even assuming Frank had standing to raise those exceptions, it would have erred by doing so. *See In re R.T.K.*, 324 S.W.3d at 900; TEX. FAM. CODE ANN. § 160.607(b). Accordingly, we sustain Jordan's argument that no § 160.607(b) exception applied to allow Frank to file his petition after Lucy's fourth birthday. *See* TEX. FAM. CODE ANN. § 160.607(b).

9

**B. Constitutionality**

We next address Frank's contention that § 160.607 violates his federal constitutional rights. Citing the United States Supreme Court's decision in *Michael H. v. Gerald D.*, Jordan argues that the statute is constitutional. *See* 491 U.S. 110 (1989) (plurality opinion). Frank argues that the statute violates his fundamental right to raise his child under the Due Process Clause of the United States Constitution. *See* U.S. CONST. amend. XIV. According to Frank, a "suit to adjudicate parentage should be allowed at any time whether or not a presumed father is involved."

The trial court's implicit determination that § 160.607 is unconstitutional is a legal conclusion that we review de novo. *Lund v. Giauque*, 416 S.W.3d 122, 126 (Tex. App.—Fort Worth 2013, no pet.) (citing *Stockton v. Offenbach*, 336 S.W.3d 610, 614–15 (Tex. 2011)). We begin with a strong presumption that § 160.607 is constitutional. *See* TEX. GOV'T CODE ANN. § 311.021(1); *Whitworth v. Bynum*, 699 S.W.2d 194, 196–97 (Tex. 1985) ("A court begins by presuming a statute's constitutionality, whether the basis of the constitutional attack is grounded in due process or equal protection."). "The burden is on him who attacks a law for unconstitutionality and courts need not exert their ingenuity to find reasons for holding the law invalid." *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 285 (Tex. 2010).

In the context of analyzing whether a statute violates a fundamental right under the Fourteenth Amendment, "fundamental rights" are those that are, "objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citations and internal quotation marks

omitted). "Analyzing whether an asserted right is fundamental first requires a careful description of the asserted right." *In re J.C.*, 594 S.W.3d at 474 (citing *Glucksberg*, 521 U.S. at 721; *Schlittler v. State*, 488 S.W.3d 306, 313–14 (Tex. Crim. App. 2016)). In this case, the claimed fundamental right at issue is a biological father's right to commence a paternity suit at any time to establish a parent-child relationship with a child who has a presumed father and is over four years old.

At least two Texas courts have considered and upheld the constitutionality of § 160.607's four-year statute of limitations in cases with nearly identical facts. *See In re J.C.*, 594 S.W.3d at 474–76 (in which the Fort Worth court held that § 160.607 does not infringe on a biological father's equal protection rights under the Fourteenth Amendment to the United States Constitution); *In re S.C.L.*, 175 S.W.3d at 558 (in which the Dallas court held that § 160.607 does not infringe on a biological father's due process rights under the Fourteenth Amendment to the United States Constitution). The courts in both cases relied on the Supreme Court's decision in *Michael H. v. Gerald D.*, in reaching their conclusions. 491 U.S. at 110.

In *Michael H.*, a wife engaged in an adulterous affair with her neighbor, Michael, and soon after discovered she was pregnant. *Id.* at 113–14. After the child, Victoria, was born, Michael took a blood test indicating a 98.07% probability that he was Victoria's biological father. *Id.* at 114. During the first few years of her life, Victoria and her mother lived with the husband at some points and at other times with Michael. *Id.* Both men fostered relationships with Victoria and held her out as their own child. *Id.* After the wife returned exclusively to her marital relationship, Michael, "rebuffed in his attempts to visit" Victoria, filed an action seeking to establish his paternity and right to visit Victoria. *Id.*

11

Per California law, however, "the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." *Id.* at 115. The presumption could be rebutted through blood tests, but only by motion of either the wife or husband, within two years of the child's birth. *Id.* Consequently, the trial court dismissed Michael's action, and the case eventually made its way to the United States Supreme Court, where Michael argued that the California statutory scheme violated his substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution. *Id.* at 115–17; *see* U.S. CONST. amend. XIV, § 1.

A plurality of the Court rejected Michael's arguments, concluding that he did not meet his burden to establish a constitutionally protected liberty interest in his relationship with Victoria. *Michael H.*, 491 U.S. at 121–30. The Court reiterated that a liberty interest is only one that is "fundamental" and "traditionally protected by our society." *Id.* at 122. In other words, interests "so rooted in the traditions and conscience of our people." *Id.* After conducting a historical inquiry into "older" sources and cases, the Court concluded that nothing therein addressed "the power of the natural father to assert parental rights over a child born into a woman's existing marriage with another man." *Id.* at 125. Furthermore, those sources contained no evidence that "States in fact award[ed] substantive parental rights to the natural father of a child conceived within, and born into, an extant marital union that wishe[d] to embrace the child." *Id.* at 127. "This is not the stuff of which fundamental rights qualifying as liberty interests are made." *Id.*

Thus, the plurality concluded that the California statute, which wholly proscribed standing for a man in Michael's circumstance to challenge paternity, was not unconstitutional, as it did not infringe on any fundamental liberty interest protected by the

Fourteenth Amendment. *Id.* at 129; *see* U.S. CONST. amend. XIV, § 1. In the plurality's view, it was "a question of legislative policy and not constitutional law whether California w[ould] allow the presumed parenthood of a couple desiring to retain a child conceived within and born into their marriage to be rebutted." *Michael H.*, 491 U.S. at 129–30.

The Fort Worth and Dallas courts both concluded that, if a statutory scheme that completely barred a biological father from bringing a suit to adjudicate parentage does not violate fundamental rights under the Fourteenth Amendment, certainly a statutory scheme such a § 160.607—which confers standing and four years for an alleged father to bring suit—would not violate an alleged father's fundamental rights. *In re J.C.*, 594 S.W.3d at 476; *In re S.C.L.*, 175 S.W.3d at 558; *see* TEX. FAM. CODE ANN. § 160.607. We agree.

Accordingly, we join our sister courts in upholding the constitutionality of § 160.607, and conclude that Frank's Fourteenth Amendment rights were not violated by application of the statute's four-year limitations period. *See Michael H.*, 491 U.S. at 130; *J.C.*, 594 S.W.3d at 476; *S.C.L.*, 175 S.W.3d at 558; TEX. FAM. CODE ANN. § 160.607; U.S. CONST. amend. XIV, § 1. The legislative policy in Texas provided Frank with a four-year window to commence his suit, but he failed to timely do so—even though he suspected he was Lucy's biological father, and lived with Lucy since she was approximately fifteen months old. Frank argues that § 160.607's four-year limitations period is arbitrary, and, like § 160.606, which concerns suits to adjudicate parentage when there is no presumed father, § 160.607 should state that a paternity suit may be filed "at any time." *See* TEX. FAM. CODE ANN. §§ 160.606, 160.607. But that is an issue for the legislature; it is not within this Court's purview to rewrite § 160.607 to provide Frank

13

the relief he seeks. *See id.* § 160.607.

Jordan has preserved a continuous relationship with Lucy and her three siblings, and, as Lucy's presumed father, maintains the concomitant legal rights and duties. We are mindful of the complex circumstances presented here but take comfort in knowing that both Frank and Jordan will care for Lucy to ensure her wellbeing despite the unfortunate situation Lucy was placed in, through no fault of her own.

Having concluded that no exception to § 160.607's four-year statute of limitations applies in this case, and that the statute did not unconstitutionally burden Frank's Fourteenth Amendment rights, we sustain Jordan's issue arguing that the trial court erred in adjudicating Frank as Lucy's father.

## IV.    CONCLUSION

We reverse the trial court's judgment and render judgment dismissing Frank's petition to adjudicate parentage.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
14th day of April, 2022.

14