ROBELEN PIANO COMPANY, a corporation of the State of Delaware, Defendant Below, Appellant, v. MARIE DIFONZO and RALPH A. DIFONZO, her husband, Plaintiffs Below, Appellees.

348

(*March* 9, 1961.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Daniel L. Herrmann* (of Herrmann and Duffy) and *Albert L. Simon* for appellant.

*H. Albert Young* and *Bruce M. Stargatt* (of Morford, Young and Conaway) for appellees.

Supreme Court of the State of Delaware, No. 39, 1960.

WOLCOTT, J.:

This is an appeal from a judgment of the Superior Court entered in favor of the plantiff, Marie DiFonzo (hereafter Marie), in the amount of $105,000 for personal injuries, and in favor of the co-plaintiff, Ralph DiFonzo, husband of Marie, in the amount of $25,228.70 for medical expenses and loss of consortium.

The accident, which caused Marie's injuries and later gave rise to this lawsuit, occurred in the entranceway of the store of Robelen Piano Company (hereafter Robelen). After the verdict, Robelen moved for judgment in its favor notwithstanding the verdict or, in the alternative, for a new trial. This motion was denied and Robelen appealed.

Before us Robelen renews its two-pronged attack upon the judgment. First, it argues that the judgment should be reversed and the cause remanded with instructions to enter judgment in its favor because of an alleged failure by Marie to prove any act of negligence on its part, or, if negligence was proven against it, that such negligence was not the proximate cause of Marie's injuries. It also argues that the evidence demonstrates that Marie as a matter of law was contributorily negligent. Second, it argues that in the event we refuse to direct the entry of judgment in its favor, we should reverse the judgment and remand the cause for a new trial by reason of certain alleged prejudicial errors which occurred

during the trial, and for the further reason of the asserted excessiveness of the verdict. We will consider the two broad attacks upon the judgment in the order stated.

■ Basically, the first phase of Robelen's attack upon the judgment raises a factual question. We accordingly state the facts. In so doing, however, we state them in the light most favorable to Marie and resolve all disputed factual issues in her favor. We must do this because the question is decided by consideration of whether or not any reasonable version of the facts would permit the jury to resolve the questions of negligence in Marie's favor. If this be the state of the evidence, it was not only proper but necessary for the entire case to be submitted to the jury under proper instructions.

This accident took place on January 19, 1957 in the entranceway to Robelen's store at 710 Market Street in Wilmington at about the point where such entranceway abuts on the sidewalk on Market Street. This entranceway is constructed of unglazed ceramic tile bordered by a six-inch marble strip, and is about thirteen feet in length. On either side of the entranceway are large glass show windows which also front on Market Street. The show windows and the mouth of the entranceway extend across the entire width of Robelen's store. The floor of the tile entranceway inclines from the doorway of the store to the sidewalk of Market Street at a slope of about 5%. This type of construction conformed to the requirements of the Wilmington Building Code and, at the time, was a fairly common type of entranceway for Wilmington Market Street stores.

January 19, 1957 was a clear, dry Saturday. The temperature ranged from 12 degrees at 7:00 A.M. to 31 degrees at 4:00 P.M., never rising above the freezing point. Generally speaking, the sidewalks of Market Street were clear and dry. Snow had fallen in the area about a week or ten days before. Some snow still remained on roofs and window ledges but there was none on the sidewalks.

Robelen's store was on the east side of Market Street and, consequently, its front remained in the shadow throughout the morning. As the sun, however, passed the zenith, the front of Robelen's store came into direct sunlight and snow on the window ledges directly above the north show window of Robelen's store began to melt, causing water to run down in front of the north show window, striking the pavement just north of the northerly edge of the entranceway into the store. The windows and ledges above Robelen's store were not under its control as lessee of the ground floor of the building.

The manager of Robelen's went out to lunch at about 1:15 P.M. passing down the entranceway. At that time he noticed no drip or flow of water from above as he walked across the front of the north show window. He returned from lunch at about 2:00 P.M., at which time he noticed the drip of water from above coagulating on the sidewalk into a patch of ice about two feet in diameter and about one-quarter of an inch thick. The ice thus forming was entirely on the sidewalk proper, one edge of which was distant only a few inches from the northerly side of the entranceway. The manager instructed Robelen's janitor to correct the condition. This, the janitor did by sweeping off what he described as slush into the gutter, and throwing rock salt on the area.

By reason of the application of rock salt, slush formed. By 2:30 P.M. the flow of water from above had greatly increased and was splashing down over the front of the north show window and the adjacent pavement area. The result of the flow of water, the temperature and the rock salt was an accumulation of slush which caused water to back up into a small portion of the northerly side of the entranceway. In addition, slush was kicked or tracked into the entranceway by pedestrian traffic for a distance of six inches or a foot, and extended southerly so as to cover a triangular area of

the extreme outer portion of the north side of the entrance-
way. About four-fifths of the mouth of the entranceway to
the south was free of water and slush. Following the applica-
tion of rock salt to the area, neither the manager nor any
other employee of Robelen's inspected the area until after
the accident of which Marie complains.

The slippery or icy condition described above was readily
apparent to customers of Robelen who approached the en-
tranceway from the north since it was necessary to pass di-
rectly in front of it in order to enter the store. In fact, one
such customer so approaching the store noticed the condition
and led his wife by the arm to the southerly portion of the
entranceway in order to avoid what he described on the
witness stand as a dangerous and hazardous condition.

On the day in question, Marie and her sister had been
shopping in Wilmington for about two hours. At about 2:50
P.M. they came to Robelen's with the intention of purchasing
phonograph records. They approached Robelen's from the
south, walking abreast, with Marie on the inside or to the east
of her sister. They turned into Robelen's entranceway cross-
ing the south or clear portion of it. Marie's sister, who, when
turning into the entranceway was closest to the north show
window, noticed water, slush and rock salt in the entrance-
way, but said nothing about it to Marie who, herself, did not
notice the condition. Marie and her sister remained in Robe-
len's about five minutes. As they came out they again were
walking abreast but, on this occasion, Marie was on her sis-
ter's right or nearest to the north show window. Upon pass-
ing out the door, Marie glanced down, noticed nothing and
walked down the entrance incline looking in the north show
window and talking to her sister. As she came near the side-
walk and the small area of the entranceway covered with
water, slush and rock salt, her feet shot out from under her
and she fell, suffering the admittedly severe injuries for which
she now seeks damages.

This, then, is the version of the facts most favorable to Marie. Robelen argues that this version of the facts fails to demonstrate that it negligently failed to perform any duty of care it owed to its patrons and to Marie, in particular.

Initially, Robelen points out that a storekeeper is not an insurer of the safety of his patrons. With this proposition there can be no dispute. *Thompson v. Cooles*, 7 *W. W. Harr.* 83, 180 *A.* 522. The proper rule to be applied in this case, say Robelen, is that it owed the duty to its patrons and to Marie, in particular, to exercise the same standard of care reasonably prudent storekeepers would exercise under like circumstances to keep the store premises in a reasonably safe condition for the use of customers. Similarly, with this proposition there can be no dispute. *Reardon v. Exchange Furniture Store*, 7 *W. W. Harr.* 321, 183 *A.* 330, affirmed 7 *W. W. Harr.* 332, 188 *A.* 704. The standard of care to be exercised by a reasonably prudent storekeeper is to see that such portions of his premises as would naturally and ordinarily be used by his customers are kept in a reasonably safe condition for their use. In the performance of this duty, the storekeeper is charged with responsibility for injuries caused only by defects or conditions of which he had actual notice, or which he would have discovered by such reasonable inspection as other reasonably prudent storekeepers would regard as necessary. *Reardon v. Exchange Furniture Store, supra; Fahey v. Sayer*, 9 *Terry* 457, 106 *A.* 2d 513, 49 *A. L. R.* 2d 353; *Restatement of Torts*, § 343. In this respect, as a matter of fact, a storekeeper does not differ from any landowner who invites the attendance of business guests on his premises.

Robelen argues that there is no evidence in this record that it failed to do anything violating the standard of care required of it for the protection of its customers. It points out that the condition of ice and slush in front of its store came into existence at about 2:00 P.M. and that, immediately, its

manager instructed its janitor to eliminate the condition. This was done by sweeping the water and slush into the gutter and spreading rock salt on the pavement in front of the window to prevent the further formation of ice, and to keep the water flowing. Robelen, accordingly, asks what did it do or omit to do which a reasonably prudent storekeeper would not have done under the circumstances. These acts or omissions, Robelen argues, Marie has wholly failed to prove. In opposition, Marie argues that Robelen was negligent in creating through its application of rock salt a dangerous condition in its entranceway which it knew about, or should have reasonably expected, or should have discovered by inspection.

It seems to us of primary importance that the presence of water, slush and perhaps rock salt in the entranceway, itself, of Robelen's store was a condition of Robelen's own making. See *Restatement of Torts*, § 290, Comment h. To be sure, there is some discrepancy in the proof as to whether or not the falling water formed ice or slush on the sidewalk, but there is no dispute that Robelen's action in using rock salt to eliminate the icy condition started, or at least continued, the formation of slush causing water to back up into the entranceway. It is further clear that Robelen's customers passing into the store spread the water, slush and probably salt, thus spreading, also, the slippery condition caused by Robelen. We think there is no doubt but that there is sufficient in the record to warrant the jury in finding that this condition was chargeable to the action of Robelen.

The real question on this issue is whether or not Robelen can be charged with notice of the existence of the condition its action had created. We note that the described condition existed for at least one-half to three-quarters of an hour before Marie fell. Whether or not during this time reasonable prudence should have caused Robelen's employees by inspection to have discovered it, we think was a question for the jury to determine. It is a close question but we cannot say

as a matter of law that it should have been resolved in Robelen's favor. Common prudence might well charge a person with knowledge that the application of salt to ice would create slush, and the proximity of the slush to the entranceway might well have caused such a person to anticipate backsplashing or damming up of water so as to flow it into the entranceway, or that the feet of customers would have tracked it into the entranceway. These things lie peculiarly within the province of the jury to determine.

The standard of care required of all defendants in tort actions is that of a reasonably prudent man. That standard, however, is not a definite rule easily applicable to every state of facts. The details of the standard, of necessity, must be formulated in each particular case in the light of its peculiar facts. In each case the question comes down to what a reasonable man would have done under the circumstances. In close or doubtful cases, such as this one, that question is to be determined by the jury. This is so because of public insistence that its conduct be judged in large part, at least, by a cross-section of the public. *Prosser on Torts*, § 40(5); *Restatement of Torts*, § 285, Comment e; 38 *Am. Jur., Negligence*, § 29. We think, therefore, that on the issue of Robelen's negligence there was sufficient factual showing to require the submission of the issue to the jury.

In addition, under this heading, Robelen argues that Marie failed to produce any adequate evidence that the risk to which she was subject was unreasonable, and that the condition was not discoverable by her. Similarly, with respect to these contentions, we are of the opinion that the evidence was sufficient to require the jury to resolve these issues.

With respect to Robelen's argument that its negligence was not proven to be the proximate cause of the accident, we are of the opinion that, on this issue also, a question was presented for determination by the jury. It is clear that Marie, prior to the accident, was a normal person physically; at the

time of the accident was wearing flat-heeled walking shoes, and that her fall was caused by her feet slipping out from under her, causing her to fall backward or straight down. Under the circumstances, we think it was for the jury to say whether or not the slippery condition caused the fall; whether the existence of the condition was due to Robelen's negligence, and, if so, whether it was the proximate cause of the injury.

Finally, under this phase of its argument—that is, that a verdict should have been directed in its favor—Robelen argues that Marie as a matter of law was guilty of contributory negligence proximately causing the injury, and was thus barred from any recovery whatsoever. However, we are of the opinion that the issue of her contributory negligence also was required to be submitted to the jury. We refer particularly to the facts that the day was clear and the sidewalk generally clear of ice and slush. We think the question of whether or not Marie, under the circumstances, should have seen the condition which caused her fall was a question peculiarly for the decision of the jury.

Robelen refers us to a number of reported decisions in other states holding a plaintiff contributorily negligent as a matter of law. These cases, however, are cases of inclement weather where snow or rain produced slippery conditions in the entranceways of stores. In all of them the conditions generally were such that the storekeeper could not have removed, by any reasonable means, the condition. Under such circumstances, plaintiff is chargeable as a matter of law with knowledge of such hazardous conditions and with the consequent duty to take additional care to avoid injury. *Cf. S. S. Kresge Co. v. Fader*, 116 *Ohio St.* 718, 158 *N. E.* 174, 58 *A. L. R.* 132, and *Bilger v. Great Atlantic & Pacific Tea Co.*, 316 *Pa.* 540, 175 *A.* 496, which are typical of this line of cases. No such factor is present in the case at bar and,

consequently, the issue of Marie's possible negligence contributing to the injury under the circumstances of this case was properly left to the jury.

The second phase of Robelen's attack upon the judgment below is that prejudicial error occurred in the course of the trial of sufficient import to require the reversal of the judgment and a remand for a new trial.

Initially, Robelen complains that the plaintiff called two expert witnesses who testified as to the effect of water, slush and rock salt upon unglazed ceramic tile. Their testimony in this respect was to the effect that the application of water, slush or rock salt upon such a floor surface made the surface increasingly slippery and dangerous to walk on. They specifically testified further that rock salt, contrary to having an abrasive effect upon such tile, had the effect of increasing the hazard due to the crystalline formation of rock salt and a consequent rolling effect when stepped upon.

Robelen argues that the circumstances of the case at bar were of such nature that they could be readily understood by laymen, and that the jury consequently did not require the assistance of expert testimony in order to resolve the issues.

Ordinarily, it is of course the rule that expert testimony is not admissible in a case in which the facts themselves can be adequately presented to the jury, and in which such facts are of a nature that ordinary men can understand them and draw the correct inferences from them. The propriety of the admission of expert testimony, therefore, depends upon the nature of the circumstances of the case being tried. When those circumstances are not so clear as to lead everyone to the conclusion that they are readily understandable by the ordinary person, it lies within the discretion of the trial judge to either admit or exclude such expert testimony. Whatever the rule may be in other jurisdictions, that is the rule in Delaware. *Scotton v. Wright*, 14 *Del. Ch.* 124, 122

A. 541; *South Atlantic S. S. Co. of Delaware v. Munkacsy*, 7 *W. W. Harr.* 580, 187 *A.* 600. Necessarily, therefore, the trial judge in ruling upon an offer of expert testimony must determine whether or not the jury is as well qualified as the witness to draw the proper inference from the facts of the case. This preliminary ruling of necessity is largely a matter of discretion in the trial court, and unless it is clear that such discretion has been abused, the admission of such testimony will not be held error on appeal.

We cannot say without doubt that the effect of water, slush and rock salt on unglazed ceramic tile is entirely clear without explanation to the ordinary person. Particularly is this so with respect to the opinion concerning the effect of rock salt. Indeed, we note that expert testimony offered by Robelen was to the contrary with respect to the effect of rock salt upon such tile. These circumstances lead us to conclude that the admission of this expert testimony properly was decided in the discretion of the trial judge and was not prejudicial error.

With respect, however, to certain hypothetical questions put by Marie to her expert witnesses, we reach a different result. Disregarding the contention of Robelen that the facts assumed in the hypothetical questions were contrary to the circumstances of the case, we think, nevertheless, the questions were improperly allowed over Robelen's objection. These questions were quite lengthy and largely assumed the facts we have related in the first part of this opinion, and then concluded with the following question:

"Making all of these assumptions, do you have an opinion as to the cause of this healthy female customer's fall?" To this question, after the overruling of Robelen's objection, the witness answered to the effect that the hazardous condition created by the water, slush and rock salt in combination caused the hypothetical customer to slip and fall.

■ This question called for an opinion as to the very issue before the jury. Indeed, it was the fundamental issue to be resolved by the jury. Since the determination of this issue did not require expert technical knowledge, it was highly improper to ask an expert witness as to his opinion. Opinions of witnesses are not admissible in evidence with respect to dangerous situations as the cause of injury when all the facts can be ascertained and the necessary inferences drawn from them by the jury. *South Atlantic S. S. Co. of Delaware v. Munkacsy, supra.* See, also, an annotation at 38 *A. L. R.* 2d. 13.

■ We accordingly hold that the trial judge committed error in overruling Robelen's objection and permitting the expert witness to answer the above described question.

Next, Robelen urges that the trial judge committed error in refusing to charge the jury in accordance with its prayers as to the duty of Marie to maintain a lookout in order to avoid hazardous conditions which might exist on Robelen's premises.

■ The court rejected the prayers of Robelen as drafted and, instead, charged simply that if Marie was guilty of contributory negligence, which was the proximate cause or one of the proximate causes of her accident, then she was guilty of contributory negligence and could not recover damages, irrespective of whether or not Robelen was also guilty of negligence. We think the refusal of the trial court to charge specifically on the duty of Marie to maintain a proper lookout for her own safety was error since Robelen had requested a specific charge on that subject. *Island Express v. Frederick,* 5 *W. W. Harr.* 569, 171 *A.* 181.

It is true that the prayer of Robelen on this subject left something to be desired since there was no attempt in that prayer to tailor the statement of law to the particular facts of the case. However, the request of Robelen for a charge on

Marie's duty to maintain a lookout should have been complied with since the mere request, even though embodied in an improper prayer, put upon the court the duty of charging upon the general subject. *Baker v. Reid,* 5 *Terry* 112, 57 *A.* 2d 103.

The charge should have been given in the light of the facts that Marie came out of Robelen's premises and, at the time, was looking into the north show window of Robelen's, a thing which the display in the show window was designed to accomplish, and the jury should have been told that, in the light of these circumstances, it was its function to determine what the proper duty of Marie was with regard to the maintenance of a lookout for her own safety.

The court did, of course, charge generally on the law of contributory negligence but, under the circumstances, and in view of the request of Robelen, we think the charge did not go far enough. Robelen was entitled to have the issue of contributory negligence submitted to the jury under proper instructions relating directly to the factual issues in the case. The failure to so charge is therefore error.

Robelen argues that further error was committed in the court's charge to the jury in that there was no specific instruction as to the quantum of proof required in relation to the possible contributory negligence of Marie, whereas the jury had been instructed that Robelen's negligence need be proved only by a preponderance of the evidence. We think the charge not misleading in this respect. A fair consideration of the entire instruction on negligence, both on the part of the defendant and the plaintiff, was to the effect that the proof of negligence in either respect was required to be by a preponderance of the evidence.

Next, Robelen argues that the charge disproportionately dwelt upon the possible negligence of Robelen in

comparison to the possible negligence of Marie. We have examined the charge and find no such disproportion.

Robelen next complains of a portion of the charge referring to hidden dangers. It is argued that there was no evidence whatsoever that the condition of slipperiness was hidden but, on the contrary, the proof was that it was open to casual inspection. It is true that the evidence shows no hidden danger, but the difficulty with Robelen's argument is that the charge was given as a result of its specific prayer to the court. Accordingly, Robelen is in no position to urge this as error.

Robelen also complains of the failure of the trial court to instruct the jury in accordance with its prayers to the effect that the mere fact of an accident is not proof of negligence, and that the mere presence of water, slush and salt is not necessarily evidence of negligence, and, finally, that the court had not sufficiently instructed the jury to the effect that Robelen was not an insurer of the safety of its patrons with a sufficient definition of what an insurer is. We have read the charge and are of the opinion that the substance of the requested prayers was adequately given.

There is one further matter not specifically raised in the briefs of Robelen which we note. We refer to counsel for Marie's summation to the jury in the course of which he stated that if the plaintiffs had no claim, they would not be before the jury. Counsel for Robelen objected and the court instructed the jury that the validity of the claim was in its hands.

We think the statement made by Marie's counsel an improper one in arguing to the jury since, in substance, it insinuates that the court, in permitting the claim to go before the jury, had ruled that it was a valid claim. We think the court should have been more positive in its instructions

to the jury and should have admonished counsel as to the impropriety of the argument.

Finally, Robelen argues that the amount of the verdicts in the case are so grossly excessive as to require an award of a new trial. We share to some extent Robelen's view on this matter since these verdicts are, in our opinion, quite high. However, we think we do not have to resolve the question of excessiveness.

We have referred to several errors committed in the course of this trial. Without stating whether or not, in our opinion, any one of these errors standing alone carries with it sufficient prejudice to require the award of a new trial, we are of the opinion that cumulatively they amount to prejudice and, consequently, a new trial must be awarded.

The judgments below are reversed and the cause remanded for a new trial.

*Opinion on Petition for Reargument.*

WOLCOTT, Justice.

Marie has filed a petition for reargument in which are set forth three grounds. We have considered the petition and disposed of it by means of this supplement to the main opinion. We do so in the interest of clarity since we think the main opinion, itself, must be vague, or possibly that counsel has misread it. We take up the points in the order they are presented in the petition.

First, it is argued that we should have made no reference to Marie's counsel's summation to the jury since no point was made of it by Robelen in its briefs or at oral argument. This fact was of course known to us, as we noted in the opinion. We are, however, still of the opinion that the referred-to remarks in summation should not have been made, and that, even in the absence of objection, the trial judge on

his own motion should have interrupted and instructed the jury that it was entitled to draw no inference of validity from the mere submission of the issue of liability to it.

It seems apparent from the tenor of the petition for reargument upon this point that counsel has read into the language of the opinion far more than was intended. The complaint is that counsel has been denied an opportunity to defend himself against the charge of impropriety justifying chastisement of a practitioner of thirty years good standing at the bar. We think the use of the word "admonish" in the opinion falls far short of the construction counsel has placed upon it. The meaning of the word in our understanding is to administer mild reproof or to caution.

We recognize, of course, that counsel can be carried away by the heat of contest in a trial, which we think is what happened in this case. When that occurs, we conceive it to be the duty of the trial judge to administer a mild rebuke and instruct the jury in terms calculated to remove any misunderstanding that might have been caused. Furthermore, we think that, irrespective of any assignment of such an occurrence as error, we are at liberty to take notice of it on appeal.

In any event, we decline to grant reargument, or, possibly more accurately, argument on the point since whatever the result might be it would not change the decision in the cause.

Second, it is argued that since a motion for new trial was presented to the court below raising the points relied upon by Robelen before us, and since the court below denied the motion for a new trial, we can reverse the judgment below only if we find that the court below abused its discretion in denying a new trial. Particularly, it is argued that the ruling of the court below that the questions asked of Marie's experts as to the cause of her fall, even if error, were not prejudicial

precluded any inquiry by us which went beyond the question of the exercise of judicial discretion.

Again, we think the opinion has been misread. We ruled as a matter of law that the questions were improperly allowed. Therefore, it follows that error was committed in the trial. We did not reach the final question as to whether or not such error standing alone would have been prejudicial because of the cumulative effect of several errors which in our view could have had nothing but a prejudicial effect. Consequently, we did not reach a consideration of the proper exercise of the trial judge's discretion.

Finally, it is argued, we were wrong in holding it error for the trial judge to have refused to instruct the jury as to Marie's duty to keep a lookout, fitting that instruction to the facts of this case. It is argued that where the trial judge's charge is correct, it is not error for him to fail to give a more specific instruction embodied in a legally incorrect prayer.

As an abstract proposition of law the charge to the jury was of course correct, but it did not go far enough. The jury was instructed merely that if Marie was guilty of contributory negligence which was a proximate cause of her injury she could not recover. However, the main defense of Robelen was that Marie should have seen the condition which caused her fall, and if she did not see it then she, herself, was negligent. By failing to so much as mention any possible duty of Marie to keep a lookout, the trial judge took from Robelen a possible defense it had specifically requested be included in the charge. This failure, we think, was highly prejudicial to Robelen and was an error of law occurring in the trial.

The unfortunate omission in these instructions was the failure to define contributory negligence in terms of Marie's duty, under the circumstances, to keep a proper lookout for her own safety. Robelen requested that this be done, although its prayers in this respect were not related sufficiently to the

actual circumstances, and yet the trial judge gave no instruction whatsoever upon the subject. The matter was so important to the defense that there can be little doubt of the resulting prejudice.

The petition for reargument is denied.