Charles H. McKINNEY and Elizabeth F.
McKinney, his wife, Plaintiffs,

v.

William T. REARDON, M.D., Defendant.

Superior Court of Delaware,
New. Castle.

April 16, 1975.

C. Waggaman Berl, Jr., Wilmington, for plaintiffs.

Rodney M. Layton, and Jane R. Roth, of Richards, Layton & Finger, Wilmington, for defendant.

### OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LONGOBARDI, Judge.

Plaintiffs filed this negligence action against Defendant-Physician to recover damages arising from a fall suffered by one of the Plaintiffs. Defendant has moved for partial summary judgment and this is the Court's decision thereon.

Plaintiff, whose left leg was amputated at the mid-thigh level in December, 1965, was Defendant's patient prior to the accident. Because he suffered from "phantom pain" in his amputated leg, Plaintiff attended weekly hypnotic group thereapy ses-

sions conducted by Defendant-Physician from July 16, 1969 through January 23, 1973. During the day, Plaintiff walked on a prothesis. In the evening, in order to rest his stump, he removed it and walked on crutches. Since the therapy sessions were in the evening, he almost invariably attended on crutches.

He followed a regular routine at the Defendant's office. Before and after every session, he would go to the bathroom at the head of the stairway on the second floor. The stairway lighting consisted of a pedestal lamp on the first floor and a bare bulb ceiling light on the second floor. There were also two fluorescent lights in the bathroom.

Plaintiff usually waited until the other patients left the therapy room before he went up to the bathroom. Defendant had told his patients that they might feel a slight dizziness after a hypno-therapy session and Plaintiff experienced this dizziness immediately after the sessions. However, this was not the reason for his waiting until the others had left the room. He waited for the most part so that he would not be knocked over by "sixteen in there dashing for the door" at the session's conclusion. By the time he stood up to leave the room, the dizzy sensation would be gone. He never told the Defendant that he experienced this dizziness.

Plaintiff was considered proficient with crutches. He had successfully negotiated the stairway to the bathroom approximately 350 times, half of them after the sessions. On the night of the accident, two factors differed from the ordinary. First, the lighting was different. The bulb on the second floor landing was out so the light beam from the bathroom fluorescent lights had the effect of blinding Plaintiff. Second, because of his hurry to get to the bathroom, Plaintiff was the first one out of the room at the session's conclusion. On his way out of the room, Plaintiff did not ask for assistance or mention the dizziness which he then felt.

Plaintiff fell as he ascended the stairs. According to the Plaintiff, both the lighting and his dizziness contributed to the fall. Plaintiff landed in a very painful position against the wall. Defendant's nurse pulled him from the wall so that he was in less pain. She held his head in her lap and asked how he felt. He told her he was dizzy and sick. After a few moments he felt somewhat better and, rejecting her offer of assistance, he stood up and went to the bathroom under his own power and then descended the stairs. After calling his wife, as was his custom, he drove himself home. The next morning after he was driven home from work because of trouble with his legs and ribs, Plaintiff made his first call to a doctor regarding these injuries.

Defendant has moved for a dismissal of paragraphs 5(a) and 5(c) of Plaintiff's complaint which read as follows:

"5. The Defendant was negligent in the following manner:

"(a) He permitted the said plaintiff to attempt to negotiate the stairs immediately upon his emergence from an hypnotic state when he knew, or should have known, that patients emerging from an hypnotic state are often 'light-headed' and susceptable to falls.

"(b) . . .

"(c) As a result of falling, the plaintiff herein sustained serious injuries. Nevertheless, the defendant offered no medical assistance nor did he make any arrangements for transporting the plaintiff to the hospital for emergency treatment."

 To prevail on these allegations of negligence, Plaintiffs must prove that Defendant's actions described therein violated the required standard of care. As in any tort action, the standard of care required is that of a reasonably prudent man and the details of the standard must be formulated in light of the particular facts of this case. Robelen Piano Company v. DiFonzo, Del.

Supr., 3 Storey 346, 169 A.2d 240 (1961). Paragraphs 5(a) and 5(c) relate to claims of medical malpractice. Thus, it may be stated, as a general matter, that Defendant would be answerable in damages if Plaintiff's injuries are found to have resulted from Defendant's "failure to use the standard knowledge and skill required of doctors, or by reason of his failure to use reasonable care and diligence in the application of such knowledge or skill." Christian v. Wilmington General Hospital Association, Del.Supr., 11 Terry 550, 135 A.2d 727, 730 (1957). In a medical malpractice case, it is normally necessary for the Plaintiff to supply expert testimony to enable the jury to determine whether the Defendant has been negligent. Hornbeck v. Homeopathic Hospital Association of Delaware, Del.Super., 197 A.2d 461 (1964).

Defendant argues that he was not negligent in his treatment of Plaintiff. With regard to paragraph 5(a), Defendant argues that, on the facts of this case, a reasonable physician could not have foreseen risk in allowing Plaintiff to go up to the bathroom after the session. The validity of this assertion, that is, whether a physician has a duty to foresee danger in the circumstances of this case, depends on the required standard of care. With regard to paragraph 5(c), the essential question is whether, on the facts of this case, the physician had a duty to examine and treat Plaintiff. This also depends on the required standard of care. Thus, evidence of the required standard of care is essential to a determination in this case.

Because Defendant has moved for summary judgment, "the burden is cast upon him to demonstrate to a reasonable certitude that there is no issue of fact which, if resolved in favor of the plaintiff, would hold the defendant liable." Davis v. University of Delaware, Del.Supr., 240 A.2d 583, 584 (1968). As the moving party, Defendant bears the burden of establishing in the record sufficient evidence to justify granting his motion. Phillips v. Delaware Power & Light Company, Del. Supr., 216 A.2d 281 (1966). The record of this case contained no evidence tending to establish the proper standard of care. Neither the briefs nor the court's research indicates that there is any law establishing the precise standard of care applicable in the circumstances of this case.[1] Because Defendant has failed to produce evidence of the standard of care, it can be said that there is a genuine issue of fact relating to the question of negligence. Therefore, the motion for summary judgment must be denied. Howard v. Food Fair Stores, New Castle, Inc., Del.Supr., 201 A.2d 638 (1964).

It is so ordered.

---

1. The most similar case which the Court has seen is Levett v. Etkind, 158 Conn. 567, 265 A.2d 70 (1969). Plaintiff claimed damages asserting that her decedent had been injured owing to Defendant-Physician's negligence in leaving Plaintiff's decedent, a feeble eighty-one year old woman, unassisted and unattended, while she disrobed in his office. After a verdict for the Defendant, Plaintiff appealed, assigning as error, the Court's charge to the jury. Plaintiff argued, *inter alia*, that the malpractice rule should not have been given to the jury and that expert testimony was not required. The Connecticut Supreme Court found that the determination of whether the decedent needed help in disrobing called for a medical judgment on the part of the physician. It held that the trial court properly instructed the jury on the duty of a physician to his patient. The opinion implicitly approved of the instruction that expert testimony was required. Thus, the one case even remotely similar to the instant case indicates that expert testimony is required to determine the existence of negligence. See also Hoover v. Goss, 2 Wash.2d 237, 97 P.2d 689 (1940).