# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CONNIE L. RICHARD and )
MICHAEL J. RICHARD, )
)    C.A. No. K18C-08-009 NEP
Plaintiffs, )
)
v. )
)
FAW, CASSON & CO., LLP, a )
Maryland limited liability partnership, )
JBA GREENTREE PROPERTIES, LLC, )
a Delaware limited liability company, and )
CRISSMAN CUTTERS, INC., a Delaware )
corporation, )
)
Defendants. )

Submitted: January 20, 2022
Decided: March 31, 2022

## MEMORANDUM OPINION AND ORDER

*Upon Defendant Faw, Casson & Co., LLP's Motion for Summary Judgment and/or Preclusion of Testimony of David Littlewood*

### DENIED in part and GRANTED in part

Scott E. Chambers, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, *Attorney for Plaintiffs.*

David L. Baumberger, Esquire, and Nancy Chrissinger Cobb, Esquire (argued), Chrissinger & Baumberger, Wilmington, Delaware, *Attorneys for Defendant Faw, Casson & Co., LLP.*

Kenneth M. Doss, Esquire, Casarino, Christman, Shalk, Ransom & Doss, P.A., Wilmington, Delaware, *Attorney for Defendant JBA Greentree Properties, LLC.*

Stephen F. Dryden, Esquire, Weber Gallagher Simpson Stapleton Fires & Newby, LLP, New Castle, Delaware, *Attorney for Defendant Crissman Cutters, Inc.*

**Primos, J.**

Before this Court is Defendant Faw, Casson & Co., LLP's Motion for Summary Judgment and/or Preclusion of Testimony of David Littlewood. This personal injury action arises out of the slip and fall of Connie L. Richard (hereinafter "Mrs. Richard") on an icy sidewalk at approximately 7:30 a.m. on January 9, 2018, as she arrived for a morning seminar for clients of Faw, Casson & Co., LLP (hereinafter "Faw Casson"). The incident occurred at the Greentree Shopping Center (hereinafter "Greentree") in Dover, Delaware. Faw Casson leases office space at Greentree from JBA Greentree Properties, LLC (hereinafter "JBA"), also a defendant. Named as a defendant as well is Crissman Cutters, Inc. (hereinafter "Crissman"), which had a contractual relationship with JBA to remove snow and ice from Greentree. For the reasons that follow, Faw Casson's Motion is **DENIED in part and GRANTED in part**.

## I.   FACTUAL HISTORY

Mrs. Richard is an accounting client of Faw Casson. She received an invitation from Faw Casson stating, "YOU BRING THE QUESTIONS. WE'LL BRING THE COFFEE. Get all of your questions about how the tax reform bill will impact your business answered. . . . JANUARY 9, 2018 8-9AM [sic], DOORS OPEN AT 7:30."[1]

During the days and hours leading up to the incident, a number of significant weather events occurred. On January 3 and 4, 2018, snow fell at Greentree. During the 24 hours before the incident, temperatures fluctuated from well below freezing to several degrees above freezing, and back to just below freezing, and precipitation fell, first in the form of rain and later of mist. Mrs. Richard testified that on the date of her fall, it was cold, damp, and dreary, and the walkway was icy.

---

[1] Pls.' Opp'n to Def. Faw Casson's Mt. Summ. J. and/or Preclusion of Test. of David Littlewood (hereinafter "Pls.' Opp'n"), Ex. A (emphasis in original).

As a result of Mrs. Richard's fall, she filed a complaint alleging negligence by the previously mentioned parties and seeking damages for her injuries. Her husband, Michael J. Richard ("Mr. Richard," and together with Mrs. Richard, "Plaintiffs"), filed a claim for loss of consortium as part of the same complaint.

The undisputed facts relevant to this case are the following: 1) JBA is responsible for snow and ice removal for the walkways or sidewalks; 2) Faw Casson's "[n]ormal business hours," according to the lease agreement, are 8:00 a.m. to 6:00 p.m. on weekdays and 8:00 a.m. to 1:00 p.m. on Saturdays, except holidays;[2] 3) Faw Casson did not alert JBA or Crissman of its January 9 event, which had an earlier start time (*i.e.*, outside normal business hours); and 4) Mrs. Richard was aware of the weather conditions prior to arriving at Faw Casson's business.

## II.    STANDARD OF REVIEW

Generally, when reviewing a motion for summary judgment pursuant to Delaware Superior Court Civil Rule 56, the Court must determine whether any genuine issues of material fact exist.[3] If there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[4] The moving party bears the initial burden of showing that there are no genuine issues of material fact; when such a showing is supported in the motion, the burden then shifts to the nonmoving party to show that there are material issues of fact in dispute.[5] Further, the Court must draw all factual inferences in a light most favorable to the non-moving party.[6] Therefore, summary judgment will not be

---

[2] Def. Faw Casson's Mt. Summ. J. and/or Preclusion of Test. of David Littlewood (hereinafter "Faw Casson's Mt. Summ. J."), Ex. A, Office Space Lease (hereinafter "Lease") at 19 ¶7.
[3] Super. Ct. Civ. R. 56(c); *Wilmington Trust Co. v. Aetna*, 690 A.2d 914, 916 (Del. 1996).
[4] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[5] *Sizemore*, 405 A.2d at 681.
[6] *Alabi v. DHL Airways, Inc.,* 583 A.2d 1358, 1361 (Del. 1990); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 100 (Del. 1992).

granted if it appears that there are material facts in dispute or that further inquiry into the facts would be appropriate "in order to clarify the application of the law to the circumstances."[7]

### III. PARTIES' CONTENTIONS

Faw Casson argues that summary judgment should be granted because Plaintiffs, who bear the burden of proof, have not established an essential element of the case.[8] In support of this argument, Faw Casson contends that JBA had sole responsibility for "exterior and common maintenance" and for snow and ice removal for the sidewalks and parking lots according to the lease agreement and JBA's admissions.[9] Hence, the only potential duty of Faw Casson, independent of JBA's duty to maintain, would be a duty to alert JBA that it intended to open prior to its normal business hours.[10] However, Faw Casson contends that "expert testimony [would be required] to establish a standard of care for a tenant's duties under a lease or statute. . . ."[11] During oral argument, however, Faw Casson conceded that the lease ultimately controls the standard of care issue. In addition, Faw Casson conceded at oral argument that, pursuant to applicable case law, a lessee may be required to provide warnings to invitees regardless of JBA's duty to maintain the sidewalks. However, Faw Casson contends that because Mrs. Richard was aware of the icy conditions that day, any danger was open and obvious, and Faw Casson was not required to provide Mrs. Richard a warning.

As to the motion to preclude the testimony of Plaintiffs' liability expert, David Littlewood (hereinafter "Littlewood"), Faw Casson argues that Littlewood has no "expertise in property management, landlord tenant matter, lease interpretation or

---

[7] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[8] Faw Casson's Mt. Summ. J. at ¶¶5, 9.
[9] *Id.* at ¶7.
[10] *Id.*
[11] *Id.* at ¶9.

4

legal expertise on the standard of care or duties of a tenant in commercial building or a property manager or owner [sic]."[12] Faw Casson has made no argument as to Littlewood's opinions or expertise regarding snow and ice removal.

Plaintiffs argue that although the icy conditions were predicted prior to the event, Faw Casson chose neither to cancel or delay the seminar, nor to alert its business invitees of "the weather-related risks."[13] In addition, Faw Casson never inspected the sidewalks prior to the arrival of its invitees and failed to inform JBA or Crissman that it was holding the seminar or that its clients would be arriving starting at 7:30 a.m.[14] Plaintiffs agree with Faw Casson that "Faw Casson had a commercial lease with [JBA] and that JBA had a contractual relationship with [Crissman] for snow and ice removal."[15] Plaintiffs also agree that JBA was responsible for maintaining the common areas, including the sidewalks.[16] However, Plaintiffs disagree with Faw Casson that this undertaking by JBA, *i.e.*, carrying out snow and ice removal for the sidewalks, fully absolves Faw Casson of its duties under tort law. Plaintiffs contend that there are independent duties at play. As to the preclusion of Littlewood, Plaintiffs state that Littlewood is not being offered as a property management expert. Instead, he is being called to testify about the standards for snow and ice removal and related safety issues.

JBA argues that it did not have "exclusive control" of the sidewalk in front of Faw Casson because the listed "Common Elements" in the lease agreement do not

---

[12] *Id.* at ¶5.
[13] Pls.' Opp'n at 3. At oral argument Plaintiffs conceded that Mrs. Richard was aware of the weather conditions prior to attending the seminar, and that she performed snow and ice removal in front of her own business prior to driving to the seminar. Plaintiffs contended that Faw Casson should have provided Mrs. Richard with a warning to alert her that no de-icing or snow removal had occurred.
[14] *Id.*
[15] *Id.* at 2–3.
[16] *Id.* at 3.

include "sidewalks."[17] JBA also asserts that Faw Casson had a duty as a business to exercise due care to keep the property in a reasonably safe condition,[18] and part of that duty would extend to alerting JBA that the start time for the seminar was before normal business hours. In so arguing, JBA points to an indemnity clause in its lease, which according to JBA provides that "JBA would not be liable to Faw Casson for any injury resulting from an accident or other occurrence, including without limitation snow or ice on the parking lot or <u>walkways</u>, unless caused <u>solely</u> by JBA's negligence or willful misconduct."[19] Thus, JBA asserts it "would be entitled to contractual indemnification if it is shown that Faw Casson was aware of the potential danger posed by the early start time of its seminar under the weather conditions then existing."[20] JBA makes no argument pertaining to Littlewood's expert testimony.

Finally, Crissman takes no position on Faw Casson's Motion.

## IV. DISCUSSION

### A. Motion for Summary Judgment

There are two primary legal issues that must be resolved to determine whether Faw Casson is entitled to summary judgment: first, whether Faw Casson owed a duty to its business invitees regardless of JBA's responsibility for snow and ice

---

[17] JBA's Resp. in Opp'n to Def. Faw. Casson Mot. Summ. J. (hereinafter "JBA's Resp.") at ¶3.
[18] *Id.* at ¶4.
[19] *Id.* at ¶3 (emphasis in original). The indemnity clause itself reads in relevant part as follows:

> Unless caused solely by our negligence or willful misconduct, we and our employees and agents will not be liable to you or anyone claiming through you for any injuries or damages resulting from fire, accident or other occurrence or condition upon the Real Estate, including without limitation . . . snow or ice on the parking or walkways . . . . You agree to indemnify and hold us harmless against all claims for injuries sustained by you, your employees, guests, or anyone else claiming through you except for conditions or occurrences directly attributable to our negligence or willful misconduct. We will indemnify and hold you harmless against claims for injuries and damages which arise from conditions or occurrences directly attributable to our negligence or willful misconduct.

Faw Casson's Mt. Summ. J, Ex. A, Lease at 9–10.
[20] *Id.* at ¶5.

6

removal, and second, whether expert testimony is required regarding the standard duties of a tenant pursuant to a commercial lease.

> **1. Faw Casson owed a duty to its business invitees, but not to JBA, to warn of potential dangers, and genuine issues of material fact preclude summary judgment with regard to that duty.**

In general, a business has a duty to its invitees to keep reasonable safe the portions of its premises that would "naturally and ordinarily" be used by its invitees.[21] In addition, the Delaware Supreme Court has adopted a standard regarding snow and ice accumulation that "a landlord owes to his tenants the duty of reasonable care as to the natural accumulations of ice and snow in common approaches and passageways, over which he has retained control to the exclusion of the tenants, so as to make such areas reasonably safe."[22] Specific to this case, Delaware law provides that a business has a duty to provide "safe ingress and egress" to its invitees.[23]

In *Monroe Park Apartments Corp. v. Bennett*, the Delaware Supreme Court held that a business owner need not legally own the land that it is responsible for making safe for its invitees.[24] In that case, the business owner did not make safe a patch of sidewalk that led into his building because it was owned by the State Highway Department.[25] The Supreme Court held that "[t]he fact that a small segment of the walkway lay within the dedicated area did not, in our judgment, absolve the defendant from the duty it otherwise had of exercising reasonable care in maintaining the entire walkway in a reasonably safe condition for the use of its

---

[21] *Ward v. Shoney's, Inc.*, 817 A.2d 799, 801–02 (Del. 2003) (quoting *Robelen Piano Co. v. DiFonzo*, 169 A.2d 240, 244 (Del. 1961)).
[22] *Monroe Park Apartments Corp. v. Bennett*, 232 A.2d 105, 108 (Del. 1967).
[23] *Kendzierski v. Delaware Fed. Credit Union*, 2009 WL 342895, at *1 (Del. Super. Feb. 4, 2009).
[24] *Monroe Park*, 232 A.2d at 108.
[25] *Id*.

tenants."[26]  The test is whether the landowner had "actual control" of the premises.[27]

Actual control, which can be shared,[28] means the "'authority to manage, direct, superintend, restrict or regulate.'"[29]

Faw Casson, as noted *supra*, asserts that it is absolved of liability because JBA had actual and exclusive control of the premises that Faw Casson's invitees would traverse to enter its business, at least with respect to snow and ice removal, and therefore that Faw Casson owes no duty to Mrs. Richard.   In support of this argument, Faw Casson points to the decision of the United States District Court for the District of Delaware in *Hoffman v. J.M.B. Retail Properties*, *Co.* [sic].[30]

In *Hoffman*, Defendant J.M.B. Retail Properties Company (hereinafter "JMB") was the owner of a mall at which the plaintiff was injured.  JMB argued that its lessee, Strawbridge & Clothier Department Store (hereinafter "S&C"), controlled the area where the plaintiff's injuries occurred, and therefore that JMB owed no duty to the plaintiff and was entitled to summary judgment.  The plaintiff argued that summary judgment should be denied because there was a genuine issue of material fact as to whether JMB or S&C controlled the area in question.[31]  The court granted summary judgment in favor of JMB because the defendant offered "unrefuted evidence that the property which comprised the S&C leasehold was not in the control of JMB, and unrefuted evidence that the area in which plaintiff fell was within the

---

[26] *Id.*

[27] *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688, 695 (Del. Super. May 2, 1989), *aff'd*, 571 A.2d 786 (Del. 1989).

[28] *See Monroe Park*, 232 A.2d at 108 ("Unquestionably, control may be actual though joint."); *Koutoufaris v. Dick*, 604 A.2d 390, 402 (Del. 1992) (finding that a  landowner's "actual control of the premises is a sufficient basis for positing a claim by a business invitee even if that control were shared jointly, with another party . . . .").

[29] *Craig*, 576 A.2d at 695 (quoting *Kirby v. Zlotnick,* , 278 A.2d 822, 824 (Conn. 1971)).

[30] 817 F. Supp. 448 (D. Del. 1993).  *Hoffman* was a diversity action in which the court applied Delaware law.  *Id*. at 449 n.1, 450.

[31] *Id.* at 451.

leasehold parcel of S&C."[32]   In that case there was no dispute about the issue of control "since [the] plaintiff ha[d] offered neither argument nor evidence to the contrary."[33]

There are two material distinctions between this case and *Hoffman*.  First, in *Hoffman* control of the area where the injury occurred was not disputed, and thus the court did not undertake any legal analysis on that issue, while in this case, by contrast, an examination of relevant lease provisions is necessary to determine whether JBA had exclusive control over the premises where the injury occurred or whether JBA and Faw Casson exercised joint control.  Second, in *Hoffman*, the only evidence in the record clearly established that the plaintiff's injury did not occur within the common area—an issue that is disputed here.  Therefore, the Court must take these distinctions into consideration in determining *Hoffman*'s applicability to this case.

Here, the following facts point toward JBA's exclusive control:

(1) The lease agreement between JBA and Faw Casson (hereinafter the "Lease") states that JBA "retains exclusive control over the Common Elements . . . ."[34]

(2) The Lease defines "Common Elements" as "the areas, equipment, and facilities which are not intended to be leased to and used exclusively by individual office tenants . . . ."[35]

---

[32] *Id.* at 453.

[33] *Id.* at 451.

[34] Faw Casson's Mt. Summ. J, Ex. A, Lease at 9 ("We retain exclusive control over the Common Elements, including not only the maintenance and care of the Common Elements but also the right to make changes in the Common Elements and to issue and enforce reasonable rules and regulations governing housekeeping, security, safety, and operations.").

[35] *Id.* at 6.

9

(3) The list of common elements in the Lease is not exhaustive and is "without limitation."[36]

(4) The Lease defines "Common Elements expenses" to include "snow and ice removal,"[37] which JBA concedes includes the "sidewalks" or "walkways."[38]

(5) The parcel that Faw Casson leased did not include the sidewalks but rather included only a portion of the building.[39]

The following facts point toward Faw Casson's shared control:

(1) JBA argues, and is correct, that the "Common Elements" do not explicitly include "sidewalks" or "walkways."[40]

(2) The Rules and Regulations, which are "incorporated into and made part of every lease" include, *inter alia*, that the "sidewalks. . . are not to be obstructed by trash, debris, materials, equipment or other property of tenants. Those areas are to be kept clear for their intended purposes and for passage to and from the offices."[41]

---

[36] *Id.* ("The Common Elements . . . include (without limitation) the hallways, restrooms, elevator, stairways, janitor's closet, mechanical and electrical room and equipment, landscaped areas and the parking lot.")

[37] *Id.* ("Examples of Common Elements expenses are the costs of maintaining the paved and landscaped areas . . . snow and ice removal . . . .").

[38] JBA's representative, when asked who is responsible for "situations like snow and ice works" at Greentree, stated "We are. The owner is." Faw Casson's Mt. Summ. J, Ex. B. at 5.

[39] Lease at 2 ("We hereby lease you that space in the Building which is identified as your office on the attached Exhibit 'A' (the 'Office'), and you lease the Office from us on the terms and conditions in this Lease.").

[40] *Id.* at 6.

[41] *Id.* at 18 ¶1.

(3) There is some evidence that Faw Casson knew how to notify JBA if there were issues, which may infer some sort of ability to manage or direct the area.[42]

On summary judgment, even when viewing the facts and evidence in the light most favorable to the non-moving parties, this Court finds that JBA did retain exclusive control over the sidewalks and walkways pursuant to the terms of the Lease. The Lease does not seek to identify every common element by name but rather defines the common elements as those areas not used exclusively by individual tenants. It is clear, then, from the unambiguous language of the lease that the sidewalks are part of the "Common Elements" over which JBA retained exclusive control.[43] This is similar to this Court's finding in *Slicer v. Hill*,[44] in which the Court found that the lessor had exclusive control when the Court examined substantially similar lease provisions (albeit in that case the common elements explicitly included the area in which the plaintiff was injured).[45]

The Court next turns to Plaintiffs' argument that there is an independent duty, regardless of actual control, that a business owes to invitees. The Court finds that the Restatement (Second) of Torts § 360 (1965) (hereinafter "Restatement § 360") and Delaware case law do not absolve Faw Casson of all its duties.

---

[42] Faw Casson's Mt. Summ. J, Ex. C. at 12–13, 16 (indicating that Faw Casson's employee knew to call JBA's representative, Jonathan Anstine, to alert him that someone had fallen and that the sidewalks appeared icy).

[43] Even if the provisions of the Lease were ambiguous as to exclusive control, such "ambiguity in the terms of the lease [would] be strictly construed against the lessor." *Lexington Ins. Co. v. Raboin*, 712 A.2d 1011, 1014 (Del. Super. Feb. 9, 1998), *aff'd,* 723 A.2d 397 (Del. 1998) (citing *Paul v. Paul's Liquor Store Co.*, 217 A.2d 197, 199 (Del. 1966)); *see also Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 630 (Del. 2003) (explaining that under the *contra proferentem* principle of construction, "ambiguities in a contract should be construed against the drafter.").

[44] 2012 WL 1435023 (Del. Super. Apr. 20, 2012).

[45] *Id.* at *6.

11

The Restatement § 360 addresses a situation in which premises are retained in the lessor's control while the lessee is still entitled to use such land:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee . . . for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.[46]

Restatement 360's Comment *a* illustrates the liability of the lessor when the lessee has knowledge of a dangerous condition *and* alludes to the lessee's potential liability "if he fails to warn" his own invitees.

> *Effect of lessee's knowledge of dangerous condition.* The rule stated in this Section applies to subject the lessor to liability to third persons entering the land, irrespective of whether the lessee knows or does not know of the dangerous condition. **The lessee may, for example, know that the common entrance to the apartment or office which he has leased has become dangerous for use because of the lessor's failure to maintain it in safe condition. His knowledge may subject him to liability even to his own licensees, if he fails to warn them of the danger.** It will not, however, relieve the lessor of liability for his negligence in permitting the entrance to become dangerous.[47]

This Court has noted that this "commentary to § 360 of the Restatement leaves open the possibility that a lessee may be liable to its invitees for failure to warn of dangerous conditions existing in portions of the premises over which the lessor retains control."[48] Thus, a duty of a business lessee, irrespective of a lessor's control,

---

[46] Restatement § 360.
[47] *Id.* at Cmt. *a* (emphasis supplied).
[48] *Kendzierski*, 2009 WL 342895, at *5.

is to provide an invitee "with safe ingress and egress from its business premises by warning" an invitee of "latent dangerous conditions."[49]

Liability of the business lessee for failure to warn requires, at a minimum, that the lessee either had actual knowledge of the dangerous condition or should have known about it given the circumstances.[50] Here, this duty of the lessee, when the lessor maintains control of the premises, has been explored in four previous decisions of this Court: 1) *Rentz v. Rehoboth Mall Ltd. Partnership*;[51] 2) *Kendzierski v. Delaware Federal Credit Union*;[52] 3) *Russum v. IPM Development Partnership LLC*;[53] and 4) *Dominica v. Greenery at Rodney Square, Inc*.[54] In *Rentz* the Court assumed, without deciding the issue, that lessees have a duty to warn of known structural and design defects, irrespective of control, given Comment *a* of § 360 of the Restatement, but did not rule that Comment *a* is the law in Delaware.[55] In *Kendzierski* the Court explicitly declined to hold that Comment *a* reflected Delaware law "as to all premise areas retained in control of the lessor," but found that under the facts of that case, which indicated a genuine issue as to whether the lessee knew or should have known of the dangerous condition, the lessee had a duty to warn of the condition even though the lessor retained control over the areas of ingress and egress.[56] In *Russum* the Court, without determining that Comment *a* was the law in Delaware, found that the lessee's lack of knowledge, either actual or constructive, of the dangerous condition was dispositive.[57] Finally, in *Dominica* the Court held

---

[49] *Id.* at *6.

[50] *Russum v. IPM Dev. P'ship LLC*, 2015 WL 2438748, at *4 (Del. Super. May 21, 2015) ("Hence, whether the defendant-lessee knows, or should have known, of its existence is critical.").

[51] 1997 WL 716893 (Del. Super. Aug. 22, 1997).

[52] 2009 WL 342895.

[53] 2015 WL 2438748.

[54] 2020 WL 5536696 (Del. Super. Sept. 14, 2020).

[55] 1997 WL 716893, at *3.

[56] 2009 WL 342895, at *5, *6.

[57] 2015 WL 2438748, at *4.

that "the reasons for adopting [Comment *a*] are sound" and that it "should be part of Delaware's jurisprudence."[58]  This Court finds that these four cases are instructive and that Faw Casson owed a duty to Mrs. Richard to warn her of unsafe conditions of which it knew or should have known that could have put her in harm's way in entering or exiting the business.  However, as for Plaintiffs' and JBA's argument that there is an ancillary duty that Faw Casson owed to JBA, as its lessor, to alert JBA that it was effectively changing its business hours for the day, the Court holds that there is no such duty found in the controlling document—the Lease—or supported by relevant authority.

In addition, it appears that Plaintiffs and JBA are arguing that Faw Casson breached a separate duty to Mrs. Richard by not alerting JBA of the earlier start time because it could be deemed a "reasonable step" for Faw Casson to take to ensure that the walkway or sidewalk into its building was safe for its invitees.[59]  However, Faw Casson was not subject to the general duties of a business owner, given that JBA had retained control over the area in which Mrs. Richard was injured.  Hence, the only duty supported by Delaware jurisprudence is Faw Casson's duty to warn Mrs. Richard.

There are material questions of fact as to whether Faw Casson was aware or should have been aware of the dangerous conditions of ice and snow outside its building that Mrs. Richard had to negotiate to attend the invited event.[60]  In addition,

---

[58] 2020 WL 5536696, at *3.

[59] *See Woods v. Prices Corner Shopping Ctr. Merchants Ass'n,* 541 A.2d 574, 578 (Del. Super. 1988) (explaining that a landowner or occupier, specific to the "hazards of natural accumulation of snow and ice removal . . . .  must take reasonable steps to make the premises safe for the invitees [and] may relieve himself from liability even though an invitee may be injured on his premises, by taking such steps to make the area reasonably safe, applying the 'reasonable man' standard.").

[60] *E.g.,* Faw Casson's employee testified that the ground had been salted when she arrived at the business prior to Mrs. Richard's fall, but other evidence in the record indicates that it had not been salted, and the same employee admitted that the parking lot (though not the sidewalk) was "slick" when she arrived.  Faw Casson's Mt. Summ. J., Ex. C at 7, 8, 28.

14

there are material questions and disputes of fact pertaining to whether a warning would have changed the outcome for Mrs. Richard, *i.e.*, whether it would have prevented or reduced the seriousness of her fall.  These are issues for the jury, as the trier of fact, to decide.

Finally, the Court will allow a jury to consider the facts regarding Faw Casson's earlier start time, its failure to notify JBA of that information, and testimony pertaining to other lessees' customary practice to alert JBA of potentially unsafe conditions on JBA's property,[61] for the limited purpose of showing that Faw Casson "should have known" that the danger would exist and not be extinguished by JBA's performance of snow and ice removal, and the Court will entertain a request for an appropriate limiting instruction in this regard.  However, the Court does not consider the failure to alert JBA to be a separate duty Faw Casson owed to its invitees (or to JBA).

Thus, to the extent that Plaintiffs allege that Faw Casson breached its duty to warn Mrs. Richard of the dangerous conditions, summary judgment will be denied because this Court finds that a duty to warn does exist, and further that the jury should determine whether a breach of that duty occurred.  To the extent that Plaintiffs (and JBA) allege that Faw Casson had a separate duty to alert JBA of the change to its operating hours, summary judgment is granted to Faw Casson.[62]

---

[61] JBA's representative stated that an assistant manager of Rite Aid called him on the day of the incident to let him "know that there was [sic] some slick spots in front of their store." Faw Casson's Mt. Summ. J, Ex. B at 6–7.  In addition, JBA's representative stated that he would be the person to call when tenants had concerns or noticed something. *Id.* at 17–18.

[62] Given the Court's rulings, the Court need not address JBA's arguments regarding the indemnity clause.

**2. The question of the necessity for expert testimony regarding a commercial tenant's duties to its landlord is moot.**

Faw Casson argues that an expert is needed to explain the standard of care or duties of a commercial tenant *vis-à-vis* its landlord because there are no provisions of the Lease that refer to what is required from Faw Casson in the event that it decides to change its operating hours for a day. The Court deems that issue moot given this Court's finding, explained *supra*, that such a duty did not exist as a matter of law.[63]

**3. Faw Casson was not absolved of liability for any breach of the duty to warn because Mrs. Richard was aware of the dangerous conditions.**

Along with the two issues discussed *supra*, which the Court finds not to be dispositive, there are both factual and legal disputes concerning Mrs. Richard's awareness of the conditions of the sidewalk or walkway. Plaintiffs contend that although Mrs. Richard was aware of the weather conditions and did not expect to be warned of those, she should have been warned that the sidewalk had not been de-iced and salted appropriately. Faw Casson responds that it cannot be held liable for any breach of the duty to warn, given Mrs. Richard's admission that she knew, and that the weather reports clearly articulated, that snow and ice were present that day. Therefore, according to Faw Casson, any failure to warn was not a proximate cause of Mrs. Richard's injuries.

However, the evidence in the record indicates that Mrs. Richard carefully maneuvered through the visually snowy and icy portions of the sidewalk but slipped on black ice that did not appear to be a threat.[64] There is an argument, and inference, viable with respect to summary judgment, that if Faw Casson had warned Mrs.

---

[63] *See Buford v. Ligon*, 2021 WL 5630048, at *6 (Del. Super. Nov. 30, 2021) ("Questions of duty are for the Court to decide." (citing *Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988))).
[64] Faw Casson's Mt. Summ. J, Ex. E at 79–82.

Richard that no de-icing or salting measures had been taken, she would have undertaken extreme caution as to both the visually icy portions of the sidewalk and the areas that seemed to be clear of ice (*i.e.*, "black ice" areas)— or she might even have decided not to attend the seminar. Accordingly, the proximate cause argument is not dispositive regarding Faw Casson's duty to warn Mrs. Richard.

### B. Motion to Preclude Testimony

The Court will next turn to Faw Casson's alternative motion to preclude the testimony of Plaintiffs' liability expert. The only basis for precluding Littlewood's testimony raised by Faw Casson is its assertion that he does not have qualifications regarding commercial landlord-tenant law. Because this Court has found that Faw Casson owed no duty to alert JBA of the changed start time, there remains no direct argument against the inclusion of Littlewood's testimony at this time. However, the Court did note during oral argument that some of the statements found within his expert report encroached on the province of the jury. Thus, to give guidance to the parties, the Court will address this issue.[65]

In slip-and-fall cases an expert is not always required but can be helpful.[66] Specific to slip-and-fall cases involving ice and snow accumulation, expert testimony may assist the trier of fact in understanding both the conditions that caused

---

[65] The Court is employing judicial *dictum*, *i.e.*, "statement[s] made deliberately after careful consideration and for future guidance in the conduct of litigation." *Autobahn Imports, L.P. v. Jaguar Land Rover N. Am., L.L.C.*, 896 F.3d 340, 346 (5th Cir. 2018) (quoting *Lund v. Giauque*, 416 S.W.3d 122, 129 (Tex. App. 2013)). This is in contrast to *obiter dictum*, "a statement not necessary to the determination of the case and that is neither binding nor precedential." *Id.* (quoting *Lund*, 416 S.W.3d at 129); s*ee also Cates v. Cates*, 619 N.E.2d 715, 717 (Ill. 1993) (stating that judicial *dictum* is "entitled to much weight, and should be followed unless found to be erroneous"); *accord Wild Meadows MHC, LLC v. Weidman,* 2020 WL 3889057, at *7 (Del. Super. July 10, 2020), *aff'd*, 250 A.3d 751 (Del. 2021). Any such judicial *dictum* should provide the parties direction on interests the Court deems significant for potential future Daubert motions related to Littlewood's testimony and report.

[66] *See Small v. Super Fresh Food Markets, Inc.*, 2010 WL 530071, at *4 (Del. Super. Feb. 12, 2010) ("Although an expert may indeed be 'helpful,' expert testimony is not required in a grocery store slip-and-fall case.").

the surface to be slippery[67] and the standard safety measures an entity may employ to avoid such danger.[68] Here, Littlewood's testimony helps the jury understand what a general snow and ice removal and safety plan should consist of, as it is not within the common knowledge of jurors either to understand how a commercial entity should respond to snow and ice hazards or to be aware of the existence and applicability of industry standards in this area.

However, in ice accumulation cases an expert should not encroach on the province of the jury by using the particular facts of the case to state direct findings relating to liability. To illustrate, in *Robelen Piano Co. v. Di Fonzo*, the plaintiff's counsel questioned the expert witness, who testified as to hypothetical facts regarding ice accumulation, and then asked, "'Making all of these assumptions, do you have an opinion as to the cause of this healthy female customer's fall?'"[69] On appeal, the Delaware Supreme Court found that such a question was improper because it

> called for an opinion as to the very issue before the jury. Indeed, it was the fundamental issue to be resolved by the jury. Since the determination of this issue did not require expert technical knowledge, it was highly improper to ask an expert witness as to his opinion. Opinions of witnesses are not admissible in evidence with respect to dangerous situations as the cause of injury when all the facts can be ascertained and the necessary inferences drawn from them by the jury.[70]

Accordingly, Littlewood's testimony should neither suggest determinations regarding liability nor apply the fact pattern of this case, or a hypothetical facsimile

---

[67] *See Robelen Piano Co. v. DiFonzo*, 169 A.2d 240, 246 (Del. 1961) (refusing to overturn a trial judge's admission of expert testimony as to effect of water, slush and rock salt on tile paving).
[68] *See Spencer v. Wal-Mart Stores E., LP*, 2006 WL 1520203, at *1 (Del. Super. June 5, 2006) (evaluating the credentials of an expert to speak about a snow and ice removal plan in a slip-and-fall case).
[69] 169 A.2d at 246.
[70] *Id.* (citing *S. Atl. S. S. Co. of Del. v. Munkacsy*, 187 A. 600, 604 (Del. 1936)).

to it, in making conclusory statements regarding proximate cause. Littlewood's conclusory pronouncements on these issues are improper, and such statements are determinations that do not require an expert's technical knowledge. Examples of these statements are as follows:

(1) "The actions and/or inactions of Connie Richard were not the cause of her fall."[71]

(2) "Had the subject walkway been reasonably inspected and properly cleared of snow and ice, and had ice melt or a de-icing treatment been reasonably applied on the subject walkway at a reasonable amount of time prior to the beginning of the seminar at Faw, Casson & Co., this incident would have been prevented."[72]

(3) "Had warning signs or cones been placed warning guests, such as Connie Richard, of the hazardous slippery conditions on the incident walkway, the risk of this incident would have been reduced or eliminated."[73]

(4) "Had the incident walkway been properly maintained free of ice hazards, in compliance with the International Property Maintenance Code/2009 and the International Fire Code/2009, Connie Richard's incident would have been avoided."[74]

These statements, along with others found in the report, intrude upon the province of the jury and go to the heart of Mrs. Richard's claims. Hence, because of the nature of the case, Littlewood's testimony should avoid conclusory statements regarding the ultimate issues to be decided by the jury.

---

[71] Pls.' Opp'n, Ex. E at 13.
[72] *Id.* at 14.
[73] *Id.*
[74] *Id.* at 15.

## V. CONCLUSION

For the foregoing reasons, Faw Casson's Motion is **DENIED in part and GRANTED in part**.

Very truly yours,

_____
Judge

NEP:tls
*Via File & ServeXpress*
oc:    Prothonotary
        Counsel of Record